# ATTACHMENT 2

IN THE CITY OF CHICAGO

DEPARTMENT OF ADMINISTRATIVE HEARINGS

MUNICIPAL HEARINGS DIVISION

APPEALS - DENIALS OF PARADE PERMITS


| | |
|---|---|
| Chicago Alliance Against Racist & Political Repression | ) ) ) |
| Petitioner, | ) ) |
| V. | ) Docket #24PA000003 ) |
| CITY OF CHICAGO, (Dept. of Streets & Sanitation) | ) ) ) |
| Respondent. | |

Hearing date:                    February 14, 2024


Location:                    Central Hearing Facility,
                             400 West Superior,
                             Chicago, IL


Administrative Law Judge:     Frank Lombardo

For the City of Chicago:

Attorney:                     Matthew Spahr
Attorney:                     Christopher Dionne
Witness:                      Bryan Gallardo
Witness:                      None


For the Plaintiff:

Attorney:                     Daniel Massoglia
Attorney:                     Madeline Townsend
Attorney:                     Jacqueline Spreadbury
Witness:                      Kobi Guillory:
Witness:                      Joe Iosbaker

Page 2

1               ADMINISTRATIVE LAW JUDGE LOMBARDO:

2    This is Administrative Law Judge Frank Lombardo.

3    Today is February 14, 2024, in Room 105, Central

4    Hearing Facility.

5               Okay.  I am Administrative Law Judge

6    Frank Lombardo.  I've been appointed to hear this

7    matter today.  I am an attorney, I'm not an

8    employee for the City of Chicago, so I don't

9    represent either party to this matter.  I'm here to

10   listen to the evidence and then make a

11   determination whether, in this case, the

12   Commissioner of the Department of Transportation

13   made a proper decision under the ordinance.  And

14   either affirm or reverse his decision.

15              This is a -- essentially a new

16   hearing.  So the City will have the burden.  The

17   burden is preponderance of the evidence, all right?

18   As I said, everything is being recorded.  I need

19   anybody that will represent the parties state their

20   names and spell their last names, please.

21              MR. SPAHR:  ACC Matthew Spahr, S, P as

22   in Pepper, A-H-R.

23              ADMINISTRATIVE LAW JUDGE LOMBARDO:

24   And you?

1          MR.  DIONNE:  ACC Chris Dionne,

2    D-I-O-N-N-E.

3          ADMINISTRATIVE LAW JUDGE LOMBARDO:

4    And for the applicant?

5          MR. MASSOGLIA:  Daniel Massoglia,

6    M-A-S-S-O-G-L-I-A, for the Coalition.

7          MS. TOWNSEND:  Madeline Townsend,

8    T-O-W-N-S-E-N-D, also for the Coalition.

9          MS. SPREADBURY:  Jacqueline

10   Spreadbury, S-P-R-E-A-D-B-U-R-Y, also for the

11   Coalition.

12          ADMINISTRATIVE LAW JUDGE LOMBARDO:

13   Okay.  Thank you.  All right.  This is concerning

14   the parade permit application of March on the DNC

15   and March on the DNC 08-22-24.  Sponsoring

16   organization Chicago Alliance Against Racist and

17   Political Repression.  And it's been given the

18   Docket Number 24PA000003.  Any preliminary matters?

19          MR. MASSOGLIA:  Yes, Your Honor.

20   There were two motions filed [inaudible] in the

21   past day.  Yesterday, the City presented a motion

22   styled as a motion to limit the scope.  Seeking to

23   limit the argument evidence, appeal, and testimony

24   that would be elicited today.

Page 4

1                    ADMINISTRATIVE LAW JUDGE LOMBARDO:

2      Uh-huh.

3                    MR. MASSOGLIA:  We received service of

4      that at 4:27 p.m. yesterday.  As a result of that

5      motion we have moved separately for a continuance.

6      It's not yet file stamped, but it was served upon

7      Counsel --

8                    ADMINISTRATIVE LAW JUDGE LOMBARDO:

9      Uh-huh.

10                    MR. MASSOGLIA:  -- yesterday evening

11     or early this morning.  I have a copy for the

12     Court.  But I --

13                    ADMINISTRATIVE LAW JUDGE LOMBARDO:  So

14     City filed a motion you're saying?

15                    MR. MASSOGLIA:  Yes.

16                    MR. DIONNE:  Yes, Judge.

17                    ADMINISTRATIVE LAW JUDGE LOMBARDO:

18     All right.  Mr. Dionne, what's that about?

19                    MR.  DIONNE:  Yes, Judge.  The City

20     filed a motion and the file was stamped yesterday

21     with Department of Administrative Hearings,

22     specifically asking that this Court in this hearing

23     limit the scope.  Does Your Honor have a copy of

24     the motion that was filed by the City?

Page 5

1              ADMINISTRATIVE LAW JUDGE LOMBARDO:  I

2    do not.

3              MR.  DIONNE:  Okay.  One moment.

4              ADMINISTRATIVE LAW JUDGE LOMBARDO:

5    You know what?  Just -- let's do this.  You know,

6    we don't really do motion practice here.  So what's

7    the -- just give me a quick -- what's the nature of

8    your motion.

9              MR.  DIONNE:  Well, Judge, at issue is

10   what's going to be litigated at today's hearing.

11   Specifically, that -- the factual analysis, on

12   January 10, 2024, the Petitioner filed an

13   application for the parade using the public way

14   with the Chicago Department of Transportation,

15   which is attached at City's Exhibit 1 in our

16   motion.

17              On January 22, 2024, the Chicago

18   Department of Transportation or CDOT denied the

19   Petitioner's parade application and provided an

20   alternate route as required under the code.  The

21   Petitioner did not file an appeal of that decision.

22              On January 30, 2024, the Petitioner

23   filed a second parade permit application.  Now,

24   other than the date of the second parade and the

1    name of the second parade, Petitioner's second

2    parade application was identical to the first

3    application, which is attached as Exhibit 3 from

4    the City.

5             CDOT then denied the Petitioner's

6    January 30, 2024 parade application under Sections

7    10-8-330(d)(1) and 10-8-330(d)(3) of the code on

8    February 1, 2024, attached as City's Exhibit 4.

9             Then on February 7, 2024, Petitioner

10   filed an appeal of CDOT's "rejection of our parade

11   permit application."  And attached two exhibits

12   purportedly of both of its applications and the two

13   exhibits of CDOT's denial.

14            The City is specifically requesting

15   and noting that Petitioner failed to file a timely

16   appeal of the prior January 22, 2024 application

17   and, consequently, that denial should not be

18   included or made part of the pending parade permit

19   denial, which is at issue today.

20            ADMINISTRATIVE LAW JUDGE LOMBARDO:

21   Okay.  So basically, you're saying there was two

22   applications and two denials?

23            MR.  DIONNE:  There were two

24   applications and two separate denials and only one

1    appeal filed.

2                ADMINISTRATIVE LAW JUDGE LOMBARDO:

3    All right.  And you're saying only one appeal, so

4    we should only consider one application and one

5    denial?

6                MR.  DIONNE:  We should only be

7    hearing today the February 1, 2024 denial as that

8    was the only appeal that was filed --

9                ADMINISTRATIVE LAW JUDGE LOMBARDO:

10   All right --

11               MR.  DIONNE:  -- within the five

12   business days.

13               ADMINISTRATIVE LAW JUDGE LOMBARDO:

14   And for the Applicant -- are you the lead attorney,

15   Mr. Massoglia?

16               MR. MASSOGLIA:  Yes, sir.

17               ADMINISTRATIVE LAW JUDGE LOMBARDO:

18   Okay.  Counsel's telling me that you filed your

19   request for a review of your permit application,

20   but you attached two applications and two denials.

21   So what is your intent; which one are you looking

22   for a review on?

23               MR. MASSOGLIA:  Yeah, and I apologize

24   for the confusion.  I was not retained by

Page 8

1   Respondent in this matter until Friday.

2               ADMINISTRATIVE LAW JUDGE LOMBARDO:

3   Uh-huh.

4               MR. MASSOGLIA:  And so I believe there

5   was some confusion about how the ordinance worked.

6               ADMINISTRATIVE LAW JUDGE LOMBARDO:

7   Okay.

8               MR. MASSOGLIA:  We understand that the

9   first appeal was untimely.  We're not contesting

10  that.

11              ADMINISTRATIVE LAW JUDGE LOMBARDO:

12  Okay.

13              MR. MASSOGLIA:  But our position as

14  outlined in our Motion for a Continuance based on

15  this --

16              ADMINISTRATIVE LAW JUDGE LOMBARDO:

17  Okay.  Well, like I said, we're not doing

18  motions --

19              MR. MASSOGLIA:  Okay --

20              ADMINISTRATIVE LAW JUDGE LOMBARDO:  So

21  with that clarification, Counsel for the City, is

22  your subject of your motion resolved?

23              MR.  DIONNE:  Well, that would be up

24  to the Court to determine what the scope of the

1    case --

2                  ADMINISTRATIVE LAW JUDGE LOMBARDO:

3    Well, he's saying he only wants a hearing on the

4    second application, right?

5                  MR. MASSOGLIA:  Well --

6                  ADMINISTRATIVE LAW JUDGE LOMBARDO:  Or

7    second denial?

8                  MR. MASSOGLIA:  The basis for the

9    second denial was set [inaudible] in the first

10   application.

11                 ADMINISTRATIVE LAW JUDGE LOMBARDO:

12   Okay.  So --

13                 MR. MASSOGLIA:  So it's hard --

14                 ADMINISTRATIVE LAW JUDGE LOMBARDO:  --

15   we'll get into the merits of it.  But that's the

16   one you want the review on, right?

17                 MR. MASSOGLIA:  Well, we want a

18   continuance because we have to [inaudible] for our

19   strategy [inaudible].  If the Court -- if the

20   City's motion is not enumerated in the rules is

21   granted.

22                 ADMINISTRATIVE LAW JUDGE LOMBARDO:

23   Well, the motion is not going to be considered.

24                 MR. MASSOGLIA:  Okay.

Page 10

```
 1              ADMINISTRATIVE LAW JUDGE LOMBARDO:  We

 2   don't have motion practice and I think your

 3   clarification resolves whatever the subject was

 4   anyway.

 5              MR.  DIONNE:  Right.  And Judge, so I

 6   guess the issue, then, here is that per the

 7   ordinance, 10-8-330, upon submission of a duplicate

 8   application, the City is permitted to deny it

 9   outright.  So at issue would just be the

10   duplicative nature at today's hearing of both

11   applications --

12              ADMINISTRATIVE LAW JUDGE LOMBARDO:

13   And that would be the subject of the hearing?

14              MR.  DIONNE:  That would be the only

15   subject of the hearing and not the basises [sic]

16   that were contained within the initial application.

17   So the City --

18              ADMINISTRATIVE LAW JUDGE LOMBARDO:  I

19   understand.

20              MR.  DIONNE:  -- only wishes to --

21              ADMINISTRATIVE LAW JUDGE LOMBARDO:  I

22   mean, the scope of the hearing is defined by the

23   ordinance.  So I'm certainly aware of that.  So I

24   think having done the clarification that they're
```

1    going on the second application and the second

2    denial, we can proceed.  Now, do you still want a

3    continuance knowing that we're only going to

4    proceed on the second application and the second

5    denial?

6              MR. MASSOGLIA:  We would.  We spent

7    about four hours last night responding with this

8    Motion for a Continuance.  We interrupted our

9    hearing prep.  If -- depending on how the -- how

10   Your Honor rules on objections over the course of

11   the day, just to provide just a little bit of

12   context, it would really sort of impact our ability

13   to fairly present the case.

14             I want to highlight a couple of things

15   first.  That the manner of proof that we intend to

16   illicit relies upon both applications.  Because if

17   something is duplicative, we have to consider what

18   is a duplicative.  A duplicative can't exist --

19             ADMINISTRATIVE LAW JUDGE LOMBARDO:

20   No.  I mean, and that's -- if that was submitted as

21   part of the evidence in the second denial,

22   certainly I'll consider it.

23             MR. MASSOGLIA:  And then -- well, I

24   don't believe it was.  They didn't --

Page 12

```
 1                    ADMINISTRATIVE LAW JUDGE LOMBARDO:
 2   Well, it hasn't been done yet.
 3                    MR. MASSOGLIA:  Okay.
 4                    ADMINISTRATIVE LAW JUDGE LOMBARDO:
 5   That's why we're here.
 6                    MR. MASSOGLIA:  And then the second
 7   issue sort of is that the Notice of Hearing
 8   provided by the City explicitly references that
 9   this will be a hearing to contest the
10   "applications."  The denial of the applications.
11   So the City provided notice indicating that this
12   hearing would at least encompass testimony and
13   argument and proof on both of those applications.
14                    ADMINISTRATIVE LAW JUDGE LOMBARDO:
15   Uh-huh.
16                    MR. MASSOGLIA:  So from a due process
17   standpoint, there wasn't adequate notice and, you
18   know, due process was [inaudible] but I believe
19   that, you know, there -- the equity of good counsel
20   and the law of good counsel is allowing Petitioner
21   time to address whatever Your Honor's eventual
22   approach to this --
23                    ADMINISTRATIVE LAW JUDGE LOMBARDO:  So
24   are you prepared to proceed on the hearing for the
```

Page 13

1    denial of the second application?

2              MR. MASSOGLIA:  If our motion is -- if

3    our Motion for a Continuance is denied, we are

4    prepared to proceed.  We would prefer not to

5    proceed.  But we are prepared to proceed.  And if

6    the -- we may renew the motion depending on --

7              ADMINISTRATIVE LAW JUDGE LOMBARDO:

8    Well, I mean, I can consider a Motion for a

9    Continuance based on good cause.  So your good

10   cause is what?

11             MR. MASSOGLIA:  Our good cause is

12   threefold.  Petitioner has been -- sorry.  The

13   client has been diligent whereas there was an

14   unfair surprise with this motion filed yesterday at

15   4:27 p.m., service was made at 4:27 p.m., forcing

16   us to interrupt our hearing prep.

17             This is the sort of thing that a

18   continuance is -- carries good cause for Your Honor

19   this tribunal has the authority within the

20   municipal code and Illinois appellate law to grant

21   the continuance when good cause is shown.

22             ADMINISTRATIVE LAW JUDGE LOMBARDO:

23   Uh-huh.

24             MR. MASSOGLIA:  And there is good case

Page 14

1    law that good cause -- continuances should be

2    granted when the interest of justice demands it,

3    essentially.

4              ADMINISTRATIVE LAW JUDGE LOMBARDO:

5    Uh-huh.

6              MR. MASSOGLIA:  And so that would be

7    our first argument.  The second is the due process

8    points that I made, which is that we prepared for

9    this hearing in the five days since we've been

10   retained with the understanding that "applications"

11   from the City's notice were at issue.

12              If that is not going to be the case or

13   if that is going to be in question in any way, we

14   need time to prepare our clients to reorganize

15   [inaudible] our examination.

16              And then, finally, there's no

17   prejudice [inaudible].  The Democratic National

18   Convention is eight months away.  Asking for a

19   short continuance at this point would not prejudice

20   the City, but failure to grant it would

21   prejudice -- based on what I've explained right

22   now, would prejudice my clients.

23              ADMINISTRATIVE LAW JUDGE LOMBARDO:

24   What kind of continuance are you looking for?

Page 15

1            MR. MASSOGLIA:  14 to 21 days.

2            ADMINISTRATIVE LAW JUDGE LOMBARDO:

3    City, any response?

4            MR.  DIONNE:  Judge, the City would

5    answer ready today and ask that the Court deny the

6    continuance.  Looking at fundamental fairness,

7    there is nothing in the Motion to Continue that

8    addresses the lack of filing an appeal process

9    within the five business days as recorded by the

10   stat -- excuse me, required by the statute.  And

11   therefore, any continuance to address that is not

12   addressed in the Motion to Continue in the first

13   place.

14           We're looking at strictly the second

15   parade permit application and denial, which the

16   Petitioner has had in their possession during the

17   entirety of the preparation for this process.  And

18   if they're answering ready to address that today,

19   then there's no prejudice as to them putting

20   together their case.

21           As such, Judge, the City answers ready

22   today and asks that you deny the continuance and

23   proceed to hearing.

24           ADMINISTRATIVE LAW JUDGE LOMBARDO:

Page 16

```
 1   Okay.  Thank you.  All right.  I don't believe
 2   there's good cause for a continuance.  I believe
 3   you were -- or should be prepared to proceed on
 4   both application and both denials, since that's
 5   what you assumed.  So with that being the case,
 6   then we should go forward with it today.
 7              MR. MASSOGLIA:  Thank you.
 8              ADMINISTRATIVE LAW JUDGE LOMBARDO:  So
 9   Motion to Continue is denied.  Seeing how this is
10   request for hearing based on a denial and there are
11   time constraints and so forth with the filings, I'm
12   going to go back to the Applicant.
13              Would you please establish the basis
14   for your appeal and my authority to make a ruling
15   today?
16              MR. MASSOGLIA:  Certainly.  Our basis
17   for our appeal is outlined in the parade ordinance,
18   which does [inaudible] within five business days,
19   the rejected permit applicant has the right to seek
20   administrative review, which my clients [inaudible]
21   with regard to the second application, which was
22   denied on February 1st.
23              We are intending -- I'm not sure what
24   exactly [inaudible] but the point of our argument
```

Page 17

1    and the rationale behind the appeal is that these

2    permits were not duplicative and we don't know what

3    steps --

4                    ADMINISTRATIVE LAW JUDGE LOMBARDO:

5    Well, let's -- we'll get into that.  I'm just

6    looking for -- and you cited the ordinance and the

7    fact that you filed within five days.  I believe

8    that's sufficient to give me authority.  City,

9    anything?

10                   MR.  DIONNE:  Judge, we're just

11   answering ready for today's hearing on the second

12   denial letter that was sent out from Department of

13   Transportation to the Petitioner on February 1, and

14   intends to be able to move forward to establishing

15   our prima facie case by a preponderance of the

16   evidence with the witness that the City has ready

17   to testify today.

18                   ADMINISTRATIVE LAW JUDGE LOMBARDO:  If

19   you're ready to proceed, then proceed.

20                   MR. MASSOGLIA:  Additionally, Your

21   Honor, we'd like to make a [inaudible] admission

22   for subpoenas given your statements on -- that

23   you're considering both applications and both

24   denials today.  For subpoenas for representatives

Page 18

1    of the United States Secret Service and the Chicago

2    Police Department.

3              If we are to, in fact, satisfy that

4    this is duplicative by comparing the process and

5    the examination impact each of the two

6    applications --

7              ADMINISTRATIVE LAW JUDGE LOMBARDO:

8    Uh-huh.

9              MR. MASSOGLIA:  -- a subpoena is

10   necessary.  We will be unable to defend our case

11   without a representative of the CPD to discuss

12   their consultation with CDOT and things along those

13   lines.

14             ADMINISTRATIVE LAW JUDGE LOMBARDO:

15   Uh-huh.  I'm going to reserve ruling on that for

16   right now.  Let's see what it is that the City is

17   going to present.  And if there's something that

18   requires that testimony, I'll certainly consider it

19   at that time.

20             MR. MASSOGLIA:  Thank you.

21             ADMINISTRATIVE LAW JUDGE LOMBARDO:

22   All right?

23             MR.  DIONNE:  Judge, the City is

24   objecting to that subpoena at this point and is

Page 19

1    asking that the Court is only going to be ruling on

2    the one application that was denied February 1,

3    2024, today.  And that's the sole basis for today's

4    hearing.

5                ADMINISTRATIVE LAW JUDGE LOMBARDO:

6    Yeah.  Did I not make that clear earlier?

7                MR. MASSOGLIA:  Yeah, it's clear

8    [inaudible].

9                ADMINISTRATIVE LAW JUDGE LOMBARDO:

10   Right?  So we're not considering the first

11   application or the first denial.

12               MR. MASSOGLIA:  Oh, we're talking

13   about them, we're not --

14               ADMINISTRATIVE LAW JUDGE LOMBARDO:

15   Well, if they present it as part of their evidence

16   in the second denial, then certainly we'll consider

17   it.

18               MR. MASSOGLIA:  Okay.

19               ADMINISTRATIVE LAW JUDGE LOMBARDO:

20   All right?

21               MR. MASSOGLIA:  Thank you, Your Honor.

22               ADMINISTRATIVE LAW JUDGE LOMBARDO:  So

23   we're clear on that?  Okay.

24               MR.  DIONNE:  Yes, Judge.

Page 20

1          ADMINISTRATIVE LAW JUDGE LOMBARDO:

2     All right, Mr. Dionne.

3          MR.  DIONNE:  Mr. Spahr is going to

4     start with opening statement, Judge.

5          ADMINISTRATIVE LAW JUDGE LOMBARDO:

6     Yeah.

7          MR. SPAHR:  Yes, Judge.  Good morning.

8     We're here today regarding the Petitioner's parade

9     application permit that was submitted to the

10    Chicago Department of Transportation on January 30,

11    2024.  This application submitted by Petitioner

12    Chicago Alliance Against Racist and Political

13    Repression.

14          Through and evidence presented today,

15    you will hear that this January 30th application is

16    not the first application submitted by the

17    Petitioner.  In fact, the City will prove by a

18    preponderance of the evidence that this January

19    30th application is substantially similar in theme

20    and units as described by an application submitted

21    by the Petitioner on January 10, 2024, which the

22    Department of Transportation timely responded to

23    pursuant to the Chicago Municipal Code.

24          You'll hear through evidence and

Page 21

1  testimony today that the only differences between

2  this January 10th and January 30th application is

3  that the date of the requested parade was moved

4  from August 19th, the first day of the Democratic

5  National Convention to August 22nd, which is the

6  last day of the Democratic National Convention.

7              Additionally, the other only

8  difference between the applications is the name

9  whereby they just added the date of the new parade.

10  They -- labeling it March on the DNC 2024.

11              The Chicago Department of

12  Transportation denied the subsequent application

13  pursuant to Chicago Municipal Code 10-8-330(d)(1),

14  (d)(3), and (d)(4) in a letter sent to Petitioner

15  on February 1, 2024.

16              Subsection (d)(1) of the ordinance is

17  clear that no person or organization may submit

18  more than one application for a parade

19  substantially similar in theme or units described

20  or requesting an alternative or a route whether

21  using the same or different names.

22              Subsection (d)(3) goes on to provide

23  that where a person or organization submits

24  multiple applications for a parade substantially

Page 22

1   similar in theme or units described but requesting

2   an alternate date, whether using one name or

3   multiple names, that person or organization shall

4   not be eligible for such a permit and shall be in

5   violation of this Subsection (d).

6            Lastly, Subsection (d)(4) authorizes

7   the commissioner to disregard any such multiple

8   applications and to deny any permit on the basis of

9   a violation of Subsection (d).

10           As to the denial of the subsequent

11  application received on January 30, 2024, and the

12  denial sent by Chicago Department of Transportation

13  on February 1, 2024, the City will illicit

14  testimony as to the duplicity of the applications,

15  which were requested by the same organization,

16  submitted by the same applicant, seeking the parade

17  the same exact route with the same amount of 1,000

18  plus participants while only changing the name of

19  the parade and the date.  Facts of all which are

20  clearly enumerated and prohibited within the

21  Chicago Municipal Code.

22           Accordingly, at the end of today's

23  hearing, the City would request this Court to

24  affirm the denial sent to the petitioners on

Page 23

1    February 1, 2024, by the Department of

2    Transportation.

3              ADMINISTRATIVE LAW JUDGE LOMBARDO:

4    All right.  Thank you, Mr. Spahr.  Applicant, any

5    opening?

6              MR. MASSOGLIA:  Good morning, Your

7    Honor.  The Chicago Alliance against Racist and

8    Political Repression has organized marches of

9    protest in the City of Chicago for more than five

10   decades.  In that time, they have advocated for the

11   rights of Black people and all oppressed people to

12   unite, organize, and fight for their freedom,

13   justice, and equality.

14              It's purported to spread a hopeful

15   message by organized protest that will uplift and

16   empower their community.

17              When the Chicago Alliance learned that

18   the 2024 Democratic National Convention would be

19   hosted in Chicago in April of last year, they

20   immediately began planning demonstrations to

21   protest the convention.

22              They formed a coalition with a number

23   of other organizations, including community groups,

24   workers organizations, Palestinian Liberation

Page 24

1    Organizations, and more.  This coalition planned a

2    march on the DNC in order to convey a set of seven

3    demands on the Democratic Party and the presumptive

4    Democratic nominee, current President Joe Biden.

5              Chicago Alliance has organized dozens,

6    if not hundreds of marches and protests, usually

7    unpermitted.  However, they decided that it would

8    be in the best interests of the safety of their

9    members and their marchers, if the march on the DNC

10   was permitted.  To do so they prepared an

11   application to march on the DNC on its opening day.

12             They initially submitted this

13   application in August of last year.  Were told that

14   it was untimely by CDOT.  And so resubmitted it in

15   early January of this year.  That application was

16   to march on the first day of the Democratic

17   National Convention, August 19, 2024.  That

18   application was submitted in January 10th this year

19   and denied.

20             However, in November of last year,

21   having witnessed a month of horrific bombing and

22   genocide by the Israeli military in Gaza that was

23   uncritically supported by the President and the

24   massive demonstrations that were erupting across

Page 25

1  Chicago and the world, the Alliance decided that

2  one march wasn't enough.

3           You will hear testimony that they then

4  decided to plan a second march on the DNC on its

5  final day when President Joe Biden is expected to

6  accept the Democratic nomination.  The application

7  for this march was submitted on or about January

8  30th and denied February 1st.

9           As you will hear from members of the

10 Coalition, these were consistently planned as

11 distinct marches with distinct messages.  The City

12 has not treated them as such.  After denying the

13 August 19th march permit on unrelated grounds, the

14 City summarily denied the August 22nd permit on the

15 ground that it was duplicative of the August 19th

16 march.

17           This was in error.  The Alliance did

18 not submit the application for the 22nd permit in

19 order to duplicate it.  It intended to march both

20 days in order to effectively convey its message of

21 utmost disagreement with President Biden's actions.

22           The evidence will show that these were

23 not substantially similar marches, thus the denial

24 of the August 22nd permit on that ground was

Page 26

1    erroneous.

2              Furthermore, the limitations, we will

3    argue, on the Alliance's First Amendment rights to

4    use the traditional public ways to associate,

5    march, and convey their political message only once

6    a year or else face civil and criminal penalties is

7    an impermissible violation of their First Amendment

8    rights.

9              For the reasons we will provide in

10   this case, we ask that Court reverse the

11   determination from the Chicago Department of

12   Transportation and approve the route as proposed by

13   the applicants in their second permit application

14   to march on August 22nd.

15             ADMINISTRATIVE LAW JUDGE LOMBARDO:

16   Thank you.  City, ready to proceed?

17             MR. SPAHR:  Yes, Judge.  At this time,

18   the City would call our first witness, Bryan

19   Gallardo.

20             ADMINISTRATIVE LAW JUDGE LOMBARDO:

21   Are there other witnesses in this room that --

22             MR. SPAHR:  Not for the City.  The

23   City would have a motion to exclude any witnesses

24   not currently testifying.

Page 27

1          MR. MASSOGLIA:  Petitioner would

2     object.

3          ADMINISTRATIVE LAW JUDGE LOMBARDO:

4     Objection overruled.  I think a motion to exclude

5     is proper.  Any witnesses that will testify in this

6     matter please step out of the room.  You will be

7     called when your testimony is required.  After your

8     testimony, you are, obviously, free to stay into

9     the room if your further testimony is not needed.

10         Any other occupants in the room will

11    not be allowed to testify.  All right.  Sir, what

12    is your name?

13         MR. GALLARDO:  My name is Bryan

14    Gallardo, G-A-L-L-A-R-D-O.

15         ADMINISTRATIVE LAW JUDGE LOMBARDO:

16    Thank you.  City, you can proceed.

17         MR. SPAHR:  If we can swear in the

18    witness.

19         ADMINISTRATIVE LAW JUDGE LOMBARDO:

20    Oh, I'm sorry.  Yes.  Mr. Gallardo, raise your hand

21    for me, please.  Do you swear the testimony you're

22    about to give will be the truth, the whole truth,

23    and nothing but the truth?

24         MR. GALLARDO:  Yes, I do.

```
                                              Page 28
 1                ADMINISTRATIVE LAW JUDGE LOMBARDO:

 2     Okay.  I'm sorry, go ahead.

 3

 4                     DIRECT EXAMINATION

 5     BY MR. SPAHR:

 6          Q.    All right, Mr. Gallardo.  Who do you

 7     currently work for?

 8          A.    I work for the Chicago Department of

 9     Transportation.

10          Q.    And is that with the City of Chicago?

11          A.    Yes, it is.

12          Q.    And how long have you worked at the

13     City of Chicago Department of Transportation?

14          A.    Since October of 2017.

15          Q.    And what is your current position in

16     that department?

17          A.    Assistant commissioner in charge of the

18     public way permitting office.

19          Q.    And how long have you held that

20     position?

21          A.    Since October of 2017.

22          Q.    Okay.  And as the assistant

23     commissioner, what are some of your

24     responsibilities, generally?
```

Page 29

1        A.    So I manage the public way permitting

2   office for the Chicago Department of

3   Transportation.  And in that office we receive

4   applications for use of the public right of way

5   of varying types.  It can be for construction, it

6   can be for a moving van, for manhole access, or

7   for festivals, athletic events, or protests, or

8   assemblies.

9        Q.    Okay.  And in regard to the parade

10  applications, is part of your responsibility to

11  respond to these applications?

12       A.    Yes.  We review the applications that

13  come in.  If input from other departments is

14  needed we'll distribute it to those departments

15  for their input and then we will either approve

16  or deny the permits.

17       Q.    And did the Chicago Department of

18  Transportation receive a parade permit

19  application from Chicago Alliance Against Racist

20  & Political Repression?

21       A.    Yes, we did.

22       Q.    And when did Chicago Department of

23  Transportation receive this application?

24       A.    We received two applications.  The

Page 30

1    first one on January 10th.  The second on

2    January 30th.

3        Q.    Okay.  I will show you now what's been

4    marked as City's Exhibit 1.  Do you recognize

5    this?

6        A.    This was an application submitted on

7    January 10th by Chicago Alliance Against Racist &

8    Political Repression.

9        Q.    And is this a true and accurate copy of

10   the parade permit application received on

11   January 10, 2024?

12       A.    Yes, I believe it is.

13       Q.    And where on this document does it

14   indicate the date that Chicago Department of

15   Transportation received said application?

16       A.    We date stamped it on the day it was

17   received on the top right corner.  You can see

18   that it was received on January 10th.

19       Q.    Okay.

20            MR. SPAHR:  At this time, the City would

21   seek to have Respondent's Exhibit 1 admitted into

22   evidence.

23            ADMINISTRATIVE LAW JUDGE LOMBARDO:  You

24   have a copy of that?

Page 31

1          MR. MASSOGLIA:  No objection.

2          ADMINISTRATIVE LAW JUDGE LOMBARDO:  No

3     objection, it will be admitted and marked as City's

4     Exhibit 1.

5

6                    (Whereby, City's Exhibit Number

7                     1 having been admitted into

8                     evidence.)

9

10    BY MR. SPAHR:

11        Q.    Now after receiving this application,

12    did Chicago Department of Transportation respond

13    to it?

14        A.    Yes, we did.  As with all parade

15    applications that we receive, it was distributed

16    to various city departments for any input.  And

17    once we received that input, we responded to the

18    letter with an objection.

19        Q.    And what date did the Chicago

20    Department of Transportation respond with their

21    letter?

22        A.    The objection letter was formally sent

23    on January 22nd.

24        Q.    Okay.  I will now show you what's been

Page 32

1      marked as City's Exhibit 2.  What is this?

2          A.    This is a copy of the objection letter

3      that was sent on January 22nd.

4          Q.    And is this a true and accurate copy of

5      the denial letter sent on January 22, 2024 by

6      Chicago Department of Transportation?

7          A.    Yes, I believe it is.

8              MR. SPAHR:  At this time, the City will

9      seek what's been marked as City's Exhibit 2 be

10     admitted into evidence.

11             ADMINISTRATIVE LAW JUDGE LOMBARDO:

12     Counsel?

13             MR. MASSOGLIA:  No objection, Your Honor.

14             ADMINISTRATIVE LAW JUDGE LOMBARDO:  All

15     right.  City, for clarification.  Was your first

16     exhibit A or 1?

17             MR. SPAHR:  City's Exhibit 1.

18             ADMINISTRATIVE LAW JUDGE LOMBARDO:  1,

19     okay.  City's Exhibit 1.  And then this will be

20     City's Exhibit 2.  Okay.

21

22                         (Whereby, City's Exhibit Number

23                          2 having been admitted into

24                          evidence.)

Page 33

1

2    BY MR. SPAHR:

3        Q.    Now, did the Chicago Department of

4    Transportation receive any appeal to the

5    application marked as City's Exhibit 1?

6        A.    Not that I'm aware of, no.

7        Q.    And did City of Chicago Department of

8    Transportation receive any subsequent

9    applications submitted by Chicago Alliance

10   Against Racist & Political Repression?

11       A.    Yes.  We received a second application

12   on January 30th.

13       Q.    And I will now show you what has been

14   marked as City's Exhibit 3.  What is this?

15       A.    This appears to be a application from

16   the Chicago Alliance Against Racist & Political

17   Repression that was received by our office on

18   January 30th.

19       Q.    And where on that document does it

20   indicate the date that CDOT received this

21   application?

22       A.    So on the top right hand corner, you'll

23   see that it was date stamped on January 30th.

24       Q.    And is this a true and accurate copy of

Page 34

1    the application received by Chicago Department of

2    Transportation on January 30, 2024?

3         A.   Yes, I believe it is.

4              MR. SPAHR:  Okay.  At this time, the City

5    would seek -- have City's Exhibit 3 be admitted into

6    evidence.

7              ADMINISTRATIVE LAW JUDGE LOMBARDO:

8    Counsel?

9              MR. MASSOGLIA:  No objection.

10             ADMINISTRATIVE LAW JUDGE LOMBARDO:   No

11   objection.  City's Exhibit 3 will be admitted as

12   evidence.

13

14                     (Whereby, City's Exhibit Number

15                      3 having been admitted into

16                      evidence.)

17

18   BY MR. SPAHR:

19        Q.   Now, Assistant Commissioner, after

20   receiving the January 30th application did you

21   compare it to the application received by the

22   same individual on January 10th?

23        A.   Yes.  I noted that is was from the same

24   applicant and looked at the request and

Page 35

1    everything except for the date and a slight

2    change to the name appeared to be the same on

3    both applications.

4        Q.    And did the -- did you reply to this on

5    behalf of the Chicago Department of

6    Transportation?

7        A.    Yes.  An objection letter was sent on

8    February 1st, noting that per the ordinance we

9    cannot take in two applications for the same

10   event.

11       Q.    I will now show you what's been marked

12   as City's Exhibit 4.  What is this?

13       A.    This is a copy of the denial letter

14   that was sent on February 1st noting that two

15   submittals for the same event cannot be received

16   by CDOT.

17       Q.    And is this a true and accurate copy of

18   the letter sent out by Chicago Department of

19   Transportation on February 1, 2024?

20       A.    Yes, I believe it is.

21            MR. SPAHR:  At this time, the City would

22   seek to have Respondent's -- City's Exhibit 4

23   admitted into evidence.

24                ADMINISTRATIVE LAW JUDGE LOMBARDO:  Okay.

Page 36

1          MR. MASSOGLIA:  No objection.

2          ADMINISTRATIVE LAW JUDGE LOMBARDO:  No

3   objection.  City's Exhibit 4 will be admitted as

4   evidence.

5

6                    (Whereby, City's Exhibit Number

7                     4 having been admitted into

8                     evidence.)

9

10         MR. SPAHR:  One moment, Judge.  City has

11  no further questions for the witness at this time.

12         ADMINISTRATIVE LAW JUDGE LOMBARDO:  All

13  right.  Counsel, cross?

14

15                 CROSS EXAMINATION

16  BY MR. MASSOGLIA:

17      Q.   Good morning, Mr. Gallardo.  Is that

18   the correct pronouncing?

19      A.   Gallardo, whatever you prefer.

20      Q.   Okay, Mr. Gallardo.  So this permit,

21   the January 30th permit, seeking a parade on

22   August 22nd, which I believe was the City's

23   Exhibit 3, you denied it as duplicative of the

24   prior permit application; is that correct?

1        A.     Yes.

2        Q.     And that permit application, the first

3    one, was for August 19th, a different day,

4    correct?

5        A.     Correct.

6        Q.     So I'd like to talk a little bit about

7    what you did to determine it was duplicative.

8    Did you do any analysis of traffic data for those

9    two days?

10        MR. SPAHR:  Objection.  Relevance.

11        ADMINISTRATIVE LAW JUDGE LOMBARDO:  Well,

12    where are you going with that question?  The

13    objection was -- or the decision was based on the

14    application, right?

15        MR. MASSOGLIA:  Yes, seems so.

16        ADMINISTRATIVE LAW JUDGE LOMBARDO:  So

17    where are you going with the question on that did

18    they --

19        MR. MASSOGLIA:  The question is if these

20    two parades are duplicative, we need to

21    understand why parades on two different dates are

22    duplicative.  And that would include --

23        ADMINISTRATIVE LAW JUDGE LOMBARDO:  Is it

24    the parade that's duplicative or the application?

1    Is that the question?

2         MR. MASSOGLIA:  The parade is not

3    duplicative and our position is neither is the

4    application.

5         ADMINISTRATIVE LAW JUDGE LOMBARDO:  Well, I

6    think the denial was based on the application

7    so --

8         MR. MASSOGLIA:  The denial was based on the

9    application --

10        ADMINISTRATIVE LAW JUDGE LOMBARDO:  Go

11    ahead and ask him questions relevant to the

12    denial of the application.  I don't know if the

13    background data that he may or may not have

14    viewed concerning the initial or the subsequent

15    application is relevant.  So objection sustained.

16

17   BY MR. MASSOGLIA:

18        Q.   So I would just like to note that --

19    well, so these permits were -- these applications

20    were denied on different grounds, correct?

21        A.   I'm not sure what you mean by different

22    grounds.  The second application, if that's what

23    you're asking about, was denied because it was

24    duplicative of the first application, which isn't

Page 39

1    allowed by the ordinance.

2        Q.   And the first application was denied,

3    not because it was duplicative but for other

4    reasons?

5        MR. SPAHR:  I would object.  The --

6        ADMINISTRATIVE LAW JUDGE LOMBARDO:

7    Overruled.  Let him answer.

8        THE WITNESS:  No, the first application was

9    circulated as all applications of this type are.

10   And we received objections based on the impact to

11   traffic, the impact to city resources, and other

12   events that were taking place in the area at the

13   time.

14       MR. MASSOGLIA:  At this point, Your Honor,

15   I'd argue that the question of traffic is now

16   relevant to this hearing.

17       ADMINISTRATIVE LAW JUDGE LOMBARDO:

18   Overruled.

19

20   BY MR. SPAHR:

21       Q.   And you said you consulted with other

22   city -- with other agencies on that first

23   application; is that right?

24       MR. SPAHR:  Objection.  Relevance.

Page 40

1          ADMINISTRATIVE LAW JUDGE LOMBARDO:  Repeat

2     the question, please.

3          MR. MASSOGLIA:  You said that you consulted

4     with other agencies as part of that first

5     application -- considering the first application;

6     is that correct?

7          ADMINISTRATIVE LAW JUDGE LOMBARDO:

8     Sustained.

9

10    BY MR. MASSOGLIA:

11         Q.   What do you -- what do you -- let me

12    ask you -- let me take a copy of City's

13    Exhibit 4, the denial from the second

14    application.  Do you have a copy of that

15    [inaudible]?

16         ADMINISTRATIVE LAW JUDGE LOMBARDO:  Say

17    that again, sir.

18         MR. MASSOGLIA:  This is [inaudible].

19         ADMINISTRATIVE LAW JUDGE LOMBARDO:  He can

20    refer to it as City Exhibit 4, that's fine.

21

22    BY MR. MASSOGLIA:

23         Q.   So let's talk about the specific

24    reasons for the denial.  You can see this

Page 41

1    document and that's the Chicago Department of

2    Transportation letterhead on the top there,

3    right?

4         A.    Yes.

5         Q.    And your signature on the bottom?

6         A.    Yes.

7         Q.    And one of your roles, I believe you

8    testified, as [inaudible] the public way

9    permitting office?

10        A.    Yes, that is my role at the City of

11   Chicago.

12        Q.    So it's squarely your responsibility to

13   determine, for example, if an application is

14   duplicative?

15        A.    That's among my responsibilities.  But,

16   yes.

17        Q.    And do you have exclusive authority to

18   make that determination?

19        A.    In terms of whether or not an

20   application is duplicative?

21        Q.    Yes.

22        A.    I believe others at CDOT can do that as

23   well.  My boss or even the commissioner can make

24    that determination as well.

Page 42

1      Q.    But you don't consult with the CPD

2    [inaudible] duplicative for example; is that

3    right?

4         MR. SPAHR:  Objection.  As to relevance.

5         ADMINISTRATIVE LAW JUDGE LOMBARDO:  I allow

6    it.  Go ahead.  Answer the question.

7         THE WITNESS:  For this particular

8    application, no, this was -- I did not consult

9    with CPD.

10

11   BY MR. MASSOGLIA:

12      Q.    Okay.  So do you see it listed three

13   bases for the denial in the letter, three

14   statutory bases?

15      A.    Yes.  Those are excerpts from the city

16   code.

17      Q.    Okay.  And so the first one, this is

18   Section 330(d)(1).  It begins:  No person or

19   organization may submit more than one application

20   for the same parade date; is that right?  That's

21   partial, I'm not saying that's the entire

22   ordinance.

23      A.    Yeah, that is in the first line, yes.

24      Q.    [Inaudible] we agreed that that's not

Page 43

1    what happened here.  It was not the same parade

2    date and route, correct?

3        A.    It was the same route and although it

4    was a different date, that is not allowed by the

5    code.

6        Q.    Okay.  And so, yeah, we agree it was a

7    different date.  And then the next portion of

8    that first subsection of the ordinance it says:

9    Or for a parade route that's substantially

10   similar [inaudible] described but different day

11   or route, right?

12       A.    Yes.  That is part of the code.

13       Q.    And would you agree that each of these

14   three subsections listed in the letter all relate

15   to the general question of whether or not an

16   application is duplicative?

17       MR. SPAHR:  Objection.  Calls for a legal

18   conclusion.

19       ADMINISTRATIVE LAW JUDGE LOMBARDO:  No, I

20   don't think it does.  Just his opinion on what it

21   says.

22       THE WITNESS:  Yeah, it's the City code and

23   I'm not an attorney, so I'm -- I just have to go

24   by the code, which states that we can't accept

Page 44

1    applications that are substantially similar but

2    on different dates.

3

4  BY MR. MASSOGLIA:

5        Q.    And I guess what I'm getting at is that

6    in assessing that in your role as managing the

7    public way permit office, you consider each of

8    these portions of the city code; is that right?

9        A.    Correct.  If -- this is the portion of

10   the city code that governs these types of

11   applications.

12       Q.    And so the second basis for denial,

13   this is Subsection (d)(3), you -- the language is

14   very similar.  Take your time and read this if

15   you'd like to in terms of what it prohibits.  But

16   they do different things; is that fair?

17       MR. SPAHR:  Objection as to vagueness.

18       ADMINISTRATIVE LAW JUDGE LOMBARDO:

19   Sustained.  Can you restate it?

20

21  BY MR. MASSOGLIA:

22       Q.    Do they serve different legal purposes,

23   they're independent bases for denial; is that

24   correct?

Page 45

1      A.    Again, not being an attorney, I don't

2   know.  I guess I'm not understanding the

3   question.

4      Q.    Well, you cited both of them, correct?

5      A.    Correct.  These are both part of the

6   code section that addresses these type of

7   applications and whether or not they're

8   duplicative.

9      Q.    And they're both reasons for the

10  denial; is that right?

11     A.    They are both part of the code that fed

12  into the denial, yes.

13     Q.    Okay.  And I mean, I believe your

14  letter states in the first paragraph, it's denied

15  for the following reasons and the lists the

16  subsections; do you see that?

17     A.    Yes.

18     Q.    Okay.  And so Section (1) says, would

19  you agree, you can't submit duplicate

20  applications.  Is that a fair summary?

21         MR. SPAHR:  Objection.  Misstates the law.

22         MR. MASSOGLIA:  Let the record reflect that

23  [inaudible].

24         ADMINISTRATIVE LAW JUDGE LOMBARDO:  Restate

Page 46

1    the question.

2

3    BY MR. MASSOGLIA:

4        Q.    Is it fair to say that the first

5    Section, (d)(1), states that no person or

6    organization may submit more than one application

7    for the same parade date and route?

8        MR. SPAHR:  Objection.  Asked and answered.

9        ADMINISTRATIVE LAW JUDGE LOMBARDO:

10   Sustained.  I think he acknowledged that already.

11

12   BY MR. MASSOGLIA:

13       Q.    So it's -- are Section 1 and 3

14   different?

15       MR. SPAHR:  Objection.  Calls for a legal

16   conclusion.

17       ADMINISTRATIVE LAW JUDGE LOMBARDO:  I think

18   it calls for his opinion.  He can give it.

19       THE WITNESS:  I don't know what you mean by

20   different.  Obviously, they are different

21   sections of the code.

22

23   BY MR. MASSOGLIA:

24       Q.    And they have different language,

Page 47

1    correct?

2         A.    They are worded differently.  But

3    again, I'm not a legal expert, so I'm not sure

4    what you mean by the difference.

5         Q.    In your opinion as the -- as the person

6    responsible -- primarily responsible for

7    approving or denying permits, do you consider the

8    last sentence of the second section that we're

9    talking about, which states the persons or

10   organizations shall not be eligible for such a

11   permit and shall be in violation of the

12   ordinance?

13        A.    Do I consider in what sense?

14        Q.    In making your decision?

15        A.    Well, that's part of the code that I

16   have to follow as a city employee, so if -- to

17   me, and again I'm not a legal expert, that's

18   saying that if I had received a duplicate

19   application, it's supposed to be denied.

20        Q.    Okay.  And then the last portion,

21   Section (d)(4), why did you include that as basis

22   for one of the reasons for your denial?

23        A.    That's just part of the information

24   that was included in the denial so that it was

1     clear that I was following the code.  And the

2     code -- and this section says the commissioner is

3     authorized to disregard any such multiple

4     applications so.

5          Q.    And [inaudible]?

6          A.    It was just for clarification.

7          Q.    And it also states and to deny -- the

8     commissioner is authorized to deny a permit on

9     the basis of a violation of the subsection?

10         A.    Correct.

11         Q.    Okay.  So what does the phrase

12    "substantially similar" mean in Section (1) and

13    (3), in your opinion as the person responsible

14    for approving and denying parade permits?

15         MR. SPAHR:  Objection.  Calls for a legal

16    conclusion.

17         ADMINISTRATIVE LAW JUDGE LOMBARDO:  No.

18    I'll allow it.  You're asking what his reason was

19    for the denial.  And he's the one that interprets

20    it and makes the decision.  Go ahead and answer,

21    sir.

22         THE WITNESS:  My understanding that if an

23    application is duplicative, that we are to deny

24    it.  If you're asking how it's duplicative, it's

Page 49

1     in the code that if the same organization using a

2     similar route or submitted by the same person or

3     organization is simply changing the date, that it

4     is considered a similar application and it's

5     duplicative.

6

7  BY MR. MASSOGLIA:

8        Q.    And when it says -- part of the basis

9     for your denial is that it was substantially

10    similar in theme or units?

11       A.    That is part of the code, yes.

12       Q.    And that was part of the basis to the

13    denial --

14       A.    Well, I'm basing my denial on the code

15    so, yes.

16       Q.    Okay.  And so what does "in theme or

17    units" mean?

18       A.    So we receive all kinds of parade

19    applications.  Whether it's a protest march,

20    whether it's for a holiday celebration like

21    St. Patrick's Day or Thanksgiving.  So some

22    parades have a specific theme, as can protests

23    have a specific theme.

24          But if the application is a similar route

Page 50

1    by the same organization, but simply changing the

2    date, and in this particular case, both of them

3    said they were expecting 1,000 plus attendees as

4    well as using the same route.  So that's how it

5    was deemed to be duplicative.

6        Q.    And did you give any consideration to

7    the fact that the name was different when

8    assessing whether the theme was the same?

9        A.    I did see that the name was different,

10   but the only difference that I see in the name is

11   that they added the new date that they were

12   requesting onto the name.

13       Q.    And did you reach out to the applicant

14   to assess whether they actually had a different

15   theme?

16       A.    For this second application?

17       Q.    Yes.

18       A.    No.  I did not.

19       Q.    Okay.  And so what makes a theme the

20   same in your professional opinion?

21       A.    That would be basically in this

22   particular case they were both protesting outside

23   the DNC location, same number of locations, same

24   route, same -- basically everything in the

1    application was the same except for they added

2    the date to the end of the name and they asked

3    for a different date.

4        Q.    Now, would you agree with me that

5    protests on different dates might have different

6    purposes?

7        MR. SPAHR:  Objection.  Outside the scope

8    and calls for speculation.

9        ADMINISTRATIVE LAW JUDGE LOMBARDO:

10   Sustained.

11

12  BY MR. MASSOGLIA:

13       Q.    In another part of the statute says in

14   theme or units.  What does units mean?

15       A.    So that's a term that we use at the

16   city to describe like marching units or -- so

17   like if you have parade that might have marching

18   bands, it might have floats or something like

19   that, each one of those would be considered a

20   unit.

21       Q.    And am I correct -- will you take my

22   word for it, that the ordinance defines parade

23   unit or unit means one vehicle, one club, or one

24   marching group?

Page 52

1     A.    I don't have that section of the code

2   in front of me but that sounds similar to how we

3   would determine it if we were assessing an

4   application.

5     Q.   Okay.

6     MR. MASSOGLIA:  So at this point, I'd like

7   go over what was marked as Petitioner's

8   Exhibit 1.  It's the municipal code parade

9   ordinance, which you have a copy of it.  In fact,

10  I can show Counsel [inaudible].

11     ADMINISTRATIVE LAW JUDGE LOMBARDO:  We can

12  take judicial notice of the ordinance.  What

13  particular section are you referring to?

14     MR. MASSOGLIA:  We're looking at

15  definitions, parade unit or unit.  It's on the

16  first page [inaudible].

17     ADMINISTRATIVE LAW JUDGE LOMBARDO:  Okay.

18

19  BY MR. MASSOGLIA:

20     Q.   Do you see that there is --

21     A.   Yes, I see where it's defined parade

22  unit or unit means one vehicle, one float, or one

23  marching group.

24     Q.   And what -- what is a marching group?

1      A.   It can be -- like I said it could be a

2   marching band or as it's defined here, I mean, it

3   can be an organization that's marching together.

4      Q.   And so am I correct in understanding

5   this comes up a lot more for maybe a parade that

6   is going to be a lot of different floats and each

7   one of those is a unit?

8      A.   Yeah, each float -- sorry.

9      MR. SPAHR:  Objection.  Speculation.

10      ADMINISTRATIVE LAW JUDGE LOMBARDO:  No,

11   I'll allow it.  Go ahead.

12      THE WITNESS:  So yeah, if we were

13   evaluating a parade that had floats we would

14   consider each float a unit.

15

16   BY MR. MASSOGLIA:

17      Q.   And do you consider each person a unit?

18      A.   I'm not aware of a situation like that.

19   The group would be a unit.  So like if you were

20   marching as a group of -- like a group of

21   plumbers marching in the St. Patrick's Day parade

22   or something like that.

23      Q.   Okay.  And so if there was one

24   application that there were going to be two

Page 54

1    separate, you know, groups of workers or whoever

2    it might be marching, each one of one of those

3    would be a separate unit; is that right?

4         MR. SPAHR:  Objection.  Improper

5    hypothetical.

6         ADMINISTRATIVE LAW JUDGE LOMBARDO:  Where

7    are you going with this, Counsel?

8         MR. MASSOGLIA:  I'm just trying to

9    understand what the ordinance means because I'm

10   very confused by it.  And I believe we need to

11   establish why -- how he is interpreting it in

12   order to establish whether this was, in fact,

13   duplicative.

14        ADMINISTRATIVE LAW JUDGE LOMBARDO:  I don't

15   think his testimony concerned anything about

16   units.

17        MR. MASSOGLIA:  Pardon?

18        ADMINISTRATIVE LAW JUDGE LOMBARDO:  I don't

19   believe his testimony concerned anything about

20   the number of units.

21        MR. MASSOGLIA:  Yeah, but that is listed as

22   a basis for the denial in City's Exhibit 2.

23        ADMINISTRATIVE LAW JUDGE LOMBARDO:  It's

24   listed in the section that lists the basis for

Page 55

1   the denial.  He doesn't have to use all those

2   bases.  He's defined which basis he used, right?

3   So I think you're going beyond the direct.

4   Sustained.

5

6   BY MR. MASSOGLIA:

7        Q.    Is it a necessary prerequisite for an

8   application by the same organization that has an

9   alternate date or route that the denial that it

10  actually be based on because it's substantially

11  similar?

12       MR. SPAHR:  Objection.  Compound --

13       ADMINISTRATIVE LAW JUDGE LOMBARDO:  Yeah, I

14  didn't get that.

15

16  BY MR. MASSOGLIA:

17       Q.    Do you have to decide if something is

18  substantially similar before you deny it as

19  duplicative?

20       A.    Well, if it -- I guess I don't

21  understand the question.  I mean, if something is

22  similar it would be duplicative.  I mean --

23       Q.    Yeah.  And that's -- that's what I'm

24  trying to tease out.  Because I'm confused by the

Page 56

1    statute.  So we talked a little bit about

2    marching groups.  And so how did in this case did

3    you ascertain the number of marching groups from

4    the application?

5         MR. SPAHR:  Objection.  Relevance.

6         ADMINISTRATIVE LAW JUDGE LOMBARDO:  I think

7    it's relevant, but I don't think it's part of

8    what he directly testified --

9         MR. SPAHR:  Beyond the scope.

10        ADMINISTRATIVE LAW JUDGE LOMBARDO:  -- to

11   so sustained.

12        MR. MASSOGLIA:  The City incorporated this

13   language that denies the application based on the

14   theme and the units.  That's why it was denied.

15   So I think it's [inaudible] that the City that

16   [inaudible] exhibit.

17        ADMINISTRATIVE LAW JUDGE LOMBARDO:  Motion

18   was sustained.

19

20  BY MR. MASSOGLIA:

21        Q.    In general, but having the same amount

22   of people or the same topic makes something

23   substantially similar?

24        A.    If two different groups applied for

Page 57

1    something similar, I guess, that would not be

2    duplicative.  But if the same group was applying

3    for the same activity in the same location, then

4    that could possibly be duplicative.

5        Q.   Okay.  And here that's what you

6    determined, it's the same organization, same

7    people, same route?

8        A.   Based on the applications that were

9    submitted, yes, it was the same route, same

10   applicant.  The only thing different was a

11   different date.

12       Q.   And you can deny it based on a

13   different -- the same parade date or the same

14   parade route, it doesn't have to be both of those

15   in order to deny as duplicative?

16       A.   So in the code, yes, if everything --

17   if the same organization applies for the same

18   route for the same activity in the same location,

19   but only changes the date, that would be deemed

20   duplicative by the ordinance.  So that's --

21   that's what I have to go by, is what's in the

22   ordinance.

23       Q.   And what if there were two applications

24   with the same theme but different dates and

Page 58

1    different routes.  Can you deny that?

2         MR. SPAHR:  Objection.  Improper

3    hypothetical, relevance.

4         ADMINISTRATIVE LAW JUDGE LOMBARDO:

5    Sustained.

6

7  BY MR. MASSOGLIA:

8         Q.   What about two applications on the same

9    date but different themes or units?

10        MR. SPAHR:  Objection.

11        ADMINISTRATIVE LAW JUDGE LOMBARDO:

12   Sustained.

13        MR. MASSOGLIA:  I've got a lot more

14   questions about this so I guess I will -- do you

15   want me to read them in to make a record and then

16   have them sustained --

17        ADMINISTRATIVE LAW JUDGE LOMBARDO:  If you

18   want to make a record you have to read them.

19        MR. MASSOGLIA:  Yeah.

20

21  BY MR. MASSOGLIA:

22        Q.   What about two applications with

23   different routes but the same theme on different

24   dates with different [inaudible]?

Page 59

1          MR. SPAHR:  Objection.

2          ADMINISTRATIVE LAW JUDGE LOMBARDO:

3     Sustained.

4          MR. MASSOGLIA:  I'll stipulate to a

5     standing objection to all these questions.

6          ADMINISTRATIVE LAW JUDGE LOMBARDO:

7     [Inaudible].

8

9  BY MR. MASSOGLIA:

10         Q.   What about the same route, same theme,

11    but different units on different dates?

12    Objection sustained.  What about -- I guess what

13    I'm getting at is [inaudible] is a little

14    confusing.

15         MR. SPAHR:  Objection.

16         ADMINISTRATIVE LAW JUDGE LOMBARDO:

17    Sustained.

18         MR. MASSOGLIA:  What's the basis for the

19    objection?

20         MR. SPAHR:  Calling for a legal conclusion,

21    improper opinion of the witness, outside the

22    scope of testimony.

23         ADMINISTRATIVE LAW JUDGE LOMBARDO:  It was

24    sustained, Counsel.

Page 60

1          MR. MASSOGLIA:  Thank you, Judge.

2

3     BY MR. MASSOGLIA:

4          Q.    And a person can be fined for violating

5     the statute?

6          A.    It's based on the code, so any fines

7     that are included in the code could be levied.

8          Q.    And they could also be imprisoned for

9     violating the statute, right?

10         A.    Again, that's based on the code.

11    That's not something that I would personally do.

12         Q.    So if you wouldn't mind turning to

13    Section (s) in the exhibit that you have in front

14    of you [inaudible].

15         MR. SPAHR:  Objection.  Beyond the scope of

16    the direct.

17         ADMINISTRATIVE LAW JUDGE LOMBARDO:

18    Sustained.

19         MR. MASSOGLIA:  So at this point, I guess,

20    I would renew my motion for subpoenas because

21    there's no way for us to make a constitutional

22    record without establishing the ordinance is

23    [inaudible].

24         ADMINISTRATIVE LAW JUDGE LOMBARDO:  If the

Page 61

1    ordinance what?

2         MR. MASSOGLIA:  Is [inaudible], which is a

3    critical inquiry in First Amendment analysis.  If

4    an ordinance provides for imprisonment or fines,

5    which this does, there are different standards,

6    more exacting standards applied to its contents.

7         ADMINISTRATIVE LAW JUDGE LOMBARDO:  Uh-huh.

8         MR. MASSOGLIA:  And so the idea is that

9    this section is [inaudible] the ordinance as

10   applied here as an improper time, place, and

11   manner of restrictions [inaudible] nature of the

12   statute as a whole is [inaudible].

13        ADMINISTRATIVE LAW JUDGE LOMBARDO:  Uh-huh.

14   And your request for subpoenas for who?

15        MR. MASSOGLIA:  At minimum, Chicago's

16   representative of the Chicago Police Department

17   and in prior [inaudible] I'm aware that the City

18   has brought a representative of the Secret

19   Service.  I don't know that [inaudible]

20   individual would be necessary [inaudible] their

21   case.

22        ADMINISTRATIVE LAW JUDGE LOMBARDO:  Well,

23   and why is that testimony of those individuals

24   relevant?

Page 62

1          MR. MASSOGLIA:  Well, because it would

2     elicit information about the conversations that

3     occur between the Chicago Police Department and

4     the Chicago Department of Transportation, the

5     decision making process and who bears

6     responsibility.

7          And Mr. Gallardo said it's not something he

8     would personally do.  But I'm not clear on who

9     can do that.

10          ADMINISTRATIVE LAW JUDGE LOMBARDO:  But

11     that didn't occur in this case.

12          MR. MASSOGLIA:  It didn't, but I --

13          ADMINISTRATIVE LAW JUDGE LOMBARDO:  So your

14     motion for subpoena is denied.

15          MR. MASSOGLIA:  I will represent to the

16     Court that that issue of fines was raised by

17     Counsel for the City.  [Inaudible] implicitly

18     yesterday on the telephone --

19          ADMINISTRATIVE LAW JUDGE LOMBARDO:  It

20     wasn't part of this record.

21          MR. MASSOGLIA:  Okay.

22          ADMINISTRATIVE LAW JUDGE LOMBARDO:

23     Subpoena denied.

24          MR. MASSOGLIA:  So remind me what I'm

Page 63

1     allowed to ask about the punitive nature of this.

2          ADMINISTRATIVE LAW JUDGE LOMBARDO:  Well, I

3     mean, you can ask your questions and see if

4     there's an objection.

5          MR. MASSOGLIA:  Okay.

6          ADMINISTRATIVE LAW JUDGE LOMBARDO:  Do you

7     want -- are you going to present a witness?

8     Maybe this witness isn't the right vehicle for

9     what you're trying to do.

10          MR. MASSOGLIA:  I think that's right.  And

11     I think given the motion yesterday and it was

12     outlined in the motion for continuance

13     [inaudible] motion for continuance to allow us to

14     address this limited scope change and legal

15     strategy that was forced upon us at the last

16     minute.

17          ADMINISTRATIVE LAW JUDGE LOMBARDO:  Denied.

18     All right.  Anything else for this witness?

19          MR. MASSOGLIA:  Oh, yeah.

20          ADMINISTRATIVE LAW JUDGE LOMBARDO:  Okay.

21

22     BY MR. MASSOGLIA:

23          Q.   So [inaudible] question about

24     Subsection (d) -- or Subsection (s).  Could you

Page 64

1    turn to that section [inaudible]?

2        MR. SPAHR:  Objection.

3        ADMINISTRATIVE LAW JUDGE LOMBARDO:

4    Sustained, Counsel.  This wasn't part of the

5    decision.

6        MR. MASSOGLIA:  I believe it is, Your

7    Honor --

8        ADMINISTRATIVE LAW JUDGE LOMBARDO:  The

9    three sections that were part of the decision are

10   cited, that you already acknowledged.

11       MR. MASSOGLIA:  Yeah.  And in Section (3)

12   it states that this is a violation of the

13   subsection.  Section (s) determines what the

14   penalties are for a violation.  I think it's

15   within the scope.

16       ADMINISTRATIVE LAW JUDGE LOMBARDO:  But the

17   penalties have already been determined, so why do

18   we need to get into what possible penalties could

19   have been imposed?

20       MR. MASSOGLIA:  I'd like to make the most

21   [inaudible] record that I possibly can as my

22   clients consider their options [inaudible]

23   determination of this proceeding.

24       ADMINISTRATIVE LAW JUDGE LOMBARDO:  I mean,

Page 65

1    I've got0 no problem giving you a little leeway

2    here, but I think I've done that quite a bit

3    already.

4         MR. MASSOGLIA:  Yeah --

5         ADMINISTRATIVE LAW JUDGE LOMBARDO:  Why

6    don't you go ahead and sum up your constitutional

7    argument and make your record and then we'll move

8    on.

9         MR. MASSOGLIA:  Sure.  So I've already done

10   it and I think we'll get to that a little bit

11   more later as to [inaudible].  But the principal

12   point is that it's very unclear what makes

13   something substantially similar.  The ordinance

14   in that way is vague and criminal penalties

15   accrue to someone who violates by submitting an

16   duplicative application.

17        I'm not clear on who makes this decision.

18   I was informed yesterday by the City [inaudible]

19   to my client.  They did not say that they would

20   issue fines, but I was sent [inaudible] any fine

21   for this.

22        ADMINISTRATIVE LAW JUDGE LOMBARDO:  Uh-huh.

23        MR. MASSOGLIA:  And so to me it's a

24   critical point that I get -- this is so much

Page 66

1    about whether the First Amendment is going to be

2    respected at the Democratic National Convention,

3    which I think everybody agrees it ought to be.

4         ADMINISTRATIVE LAW JUDGE LOMBARDO:  Uh-huh.

5         MR. MASSOGLIA:  And this ordinance does not

6    operate [inaudible].

7         ADMINISTRATIVE LAW JUDGE LOMBARDO:  Okay.

8    You've made your record.  Anything else for this

9    witness?

10         MR. MASSOGLIA:  Yeah.

11

12   BY MR. MASSOGLIA:

13        Q.    I have more questions about how many

14   parade applications you get each year and what

15   you do when you [inaudible].

16         MR. SPAHR:  Objection.  Relevance.

17         ADMINISTRATIVE LAW JUDGE LOMBARDO:  I'll

18   let him answer that one.

19         THE WITNESS:  I don't have the specific

20   count in front of me, but I'm -- probably a few

21   hundred, maybe even a couple thousand in a given

22   year.  It depends.  I don't have that information

23   in front of me.

24

Page 67

1    BY MR. MASSOGLIA:

2         Q.    You said a few hundred?

3         A.    At least.  Probably -- I mean, there's

4    a lot of different activities that fall into the

5    category of a parade.  It could be protest

6    marches, it could be wedding processions, it

7    could be -- like I said, Thanksgiving Parade,

8    St. Patrick's Day Parade.  So I don't have the

9    count in front of me of what we received last

10   year.

11        Q.    And how many of those are denied in a

12   given year?

13        MR. SPAHR:  Objection.  Relevance.

14        ADMINISTRATIVE LAW JUDGE LOMBARDO:  Where

15   are you going with that, Counsel?

16        MR. MASSOGLIA:  I'd like to know how many

17   are denied as duplicative and see if the

18   ordinance was discriminatorily applied here.

19        ADMINISTRATIVE LAW JUDGE LOMBARDO:

20   [Inaudible].

21        THE WITNESS:  I don't have that number in

22   front of me.

23        MR. SPAHR:  Objection.  Foundation.

24        ADMINISTRATIVE LAW JUDGE LOMBARDO:

Page 68

1   Anything else?

2       MR. MASSOGLIA:  I may.  I mean, I've got

3   six more pages, but I will do my best pare it

4   down.

5       ADMINISTRATIVE LAW JUDGE LOMBARDO:  Well,

6   let's just --

7       MR. MASSOGLIA:  In fact --

8       ADMINISTRATIVE LAW JUDGE LOMBARDO:  Well,

9   for the record, just say that you can submit your

10  questions and that he have a standing objection

11  and a standing sustained on your questions.

12  How's that?

13      MR. MASSOGLIA:  That is very gracious, Your

14  Honor.  I appreciate it.  I will -- I need to

15  take just a moment to review those pages and see

16  if there's anything else.

17      ADMINISTRATIVE LAW JUDGE LOMBARDO:  Sure,

18  go ahead.

19      MR. MASSOGLIA:  So do you care that we're

20  not getting into traffic data in any way?

21      ADMINISTRATIVE LAW JUDGE LOMBARDO:  I think

22  there's a standing objection as far as beyond the

23  scope of the direct examination and those types

24  of questions.  And a sustaining is a standing

Page 69

1     ruling.

2            MR. MASSOGLIA:  And a similar ruling on a

3     discussion of traffic impacts, large parades,

4     things like that?

5            ADMINISTRATIVE LAW JUDGE LOMBARDO:  Yes.

6            MR. MASSOGLIA:  Okay.

7

8   BY MR. MASSOGLIA:

9            Q.    Is it your role within the Chicago

10    Department of Transportation to consult with

11    other agencies when you receive a parade permit

12    application?

13           A.    Do I answer that question?

14           ADMINISTRATIVE LAW JUDGE LOMBARDO:  I think

15    he's already testified to that.

16           MR. SPAHR:  Yeah.  Objection.  Relevance.

17           ADMINISTRATIVE LAW JUDGE LOMBARDO:  Asked

18    and answered I believe would be the --

19           MR. SPAHR:  Asked and answered.

20

21  BY MR. MASSOGLIA:

22           Q.    And I believe you testified you didn't

23    do that in this case, right?

24           MR. SPAHR:  Objection.  Outside the scope.

Page 70

1           ADMINISTRATIVE LAW JUDGE LOMBARDO:  I think

2      he already testified to that as well.

3

4    BY MR. MASSOGLIA:

5           Q.   So you did not consult with other

6      organizations before determining this was

7      duplicative.  But did you for the first

8      application?

9           MR. SPAHR:  Objection.

10          ADMINISTRATIVE LAW JUDGE LOMBARDO:

11     Sustained.

12          MR. MASSOGLIA:  So I'd just like to look

13     one more moment.  I might have about two or three

14     more questions.

15          ADMINISTRATIVE LAW JUDGE LOMBARDO:  All

16     right.

17          MR. MASSOGLIA:  [Inaudible].

18          ADMINISTRATIVE LAW JUDGE LOMBARDO:  Sure.

19

20   BY MR. MASSOGLIA:

21          Q.   I'm going to turn your attention to

22     Subsection (g) of the ordinance.  So that's

23     procedures when receiving an application.

24          Do you see the leading line in that?  It

Page 71

1      says:  After the investigation, the

2      commissioner -- well, let me ask you a question.

3      When you receive an application that may be

4      duplicative, do you ever consult with other city

5      agencies to investigate the factor outlined in

6      (g)?

7           MR. SPAHR:  Objection.  Relevance.  And

8      vagueness.

9           MR. MASSOGLIA:  If he's got to say whether

10     or not it's similar or not I need to know what

11     he's doing to determine that, Your Honor.

12          ADMINISTRATIVE LAW JUDGE LOMBARDO:  I think

13     it's relevant.  But I think it's already

14     answered.  I mean -- repeat the question.

15

16     BY MR. MASSOGLIA:

17          Q.   When you get an application you believe

18     may be duplicative, do you ever consult with

19     other city agencies to decide is that

20     duplicative?

21          MR. SPAHR:  Objection.  Asked and answered.

22     The witness has already testified as to how he

23     considers the applications.

24          ADMINISTRATIVE LAW JUDGE LOMBARDO:  I mean,

Page 72

1    we're focused on this particular application.

2         MR. MASSOGLIA:  Uh-huh.

3         ADMINISTRATIVE LAW JUDGE LOMBARDO:  And

4    you're asking what he does in a similar

5    situation, right?

6         MR. MASSOGLIA:  [Inaudible] to the

7    testimony that he denied this application.

8         ADMINISTRATIVE LAW JUDGE LOMBARDO:  Well,

9    keep your cross based on his direct, right.  And

10   I think he already testified that he didn't in

11   this particular case.  So where are you going

12   with what he may have done with something else?

13        MR. MASSOGLIA:  [Inaudible] violation of

14   the statute based on a [inaudible] consult.

15        ADMINISTRATIVE LAW JUDGE LOMBARDO:  And you

16   believe there's some requirement or duty to

17   consult with other --

18        MR. MASSOGLIA:  I do.

19        ADMINISTRATIVE LAW JUDGE LOMBARDO:  Answer

20   the question.

21        THE WITNESS:  I can't think of a specific

22   instance where this has occurred before.  At

23   least, not in this specific situation.  But

24   again, we receive lots of applications, even for

Page 73

1    parades.  So I can't be certain that I didn't

2    share that information with other departments.

3         ADMINISTRATIVE LAW JUDGE LOMBARDO:  Okay.

4

5    BY MR. MASSOGLIA:

6         Q.    And just to be clear, I'm referring to

7    Subsection (f), which states, "The commissioner

8    shall investigate the facts set out in the

9    application, in consultation with the police

10   department."  Do you see that?

11        MR. SPAHR:  Objection.  Beyond the scope.

12        ADMINISTRATIVE LAW JUDGE LOMBARDO:

13   Sustained.

14        MR. SPAHR:  And vagueness.

15        MR. MASSOGLIA:  I don't believe I have

16   anything else --

17        ADMINISTRATIVE LAW JUDGE LOMBARDO:  All

18   right.  Thank you, Counsel.  Anything else for

19   this witness?

20        MR. MASSOGLIA:  We intend to recall based

21   on testimony presented in an affidavit to the

22   Court.  It's a 2023 correspondence -- it'll be

23   presented based on correspondence between the

24   Chicago Department of Transportation and our --

```
                                            Page 74
 1              ADMINISTRATIVE LAW JUDGE LOMBARDO:  Okay.
 2     Well, you want to recall this witness you're
 3     saying?
 4              MR. MASSOGLIA:  Yeah, after --
 5              ADMINISTRATIVE LAW JUDGE LOMBARDO:  Well,
 6     let's see if he's -- are you going to redirect?
 7              MR. SPAHR:  We have no redirect.
 8              ADMINISTRATIVE LAW JUDGE LOMBARDO:  Okay.
 9     Sir, you're excused for now, but don't leave
10     because you may be recalled as a witness, okay?
11     So stay available.
12              THE WITNESS:  Do I stay in the room or
13     should I step outside?
14              ADMINISTRATIVE LAW JUDGE LOMBARDO:  No, you
15     can -- go outside.
16              THE WITNESS:  Okay.
17              ADMINISTRATIVE LAW JUDGE LOMBARDO:  Any
18     other witnesses, City?
19              MR. SPAHR:  The City has no further
20     witnesses.
21              ADMINISTRATIVE LAW JUDGE LOMBARDO:  City
22     rests?
23              MR. SPAHR:  Yes.
24              ADMINISTRATIVE LAW JUDGE LOMBARDO:  All
```

Page 75

1    right.  Counsel, do you intend on putting on

2    witnesses in your case?

3         MR. MASSOGLIA:  Yes.  I'll go get our first

4    witness.

5         ADMINISTRATIVE LAW JUDGE LOMBARDO:  Okay.

6    Yeah, just kind of scoot up a little bit so you

7    can direct your voice to that microphone.  You

8    don't have to yell, but kind of keep your voice

9    elevated and speak slowly and clearly for me,

10   please.  What is your name?

11        MR. GUILLORY:  Kobi Guillory, K-O-B-I,

12   G-U-I-L-L-O-R-Y.

13        ADMINISTRATIVE LAW JUDGE LOMBARDO:  Raise

14   your hand, please.  Do you swear or affirm

15   testimony you're about to give will be the truth,

16   the whole truth, and nothing but the truth?

17        MR. GUILLORY:  Yes, I swear.

18        ADMINISTRATIVE LAW JUDGE LOMBARDO:  All

19   right.  Counsel, you can proceed.

20

21                 DIRECT EXAMINATION

22   BY MR. MASSOGLIA:

23        Q.   So can you just restate your name for

24   the record?

Page 76

```
 1        A.    Yeah.  Kobi Guillory, K-O-B-I,
 2    G-U-I-L-L-O-R-Y.
 3        Q.    Kobi, are you a member of the Chicago
 4    Alliance Against Racist & Political Repression?
 5        A.    Yes.  I'm one of the co-chairs.
 6        Q.    And that also -- and that group also
 7    sometimes goes by the shorthand of Chicago
 8    Alliance; is that correct?
 9        A.    Yes.
10        Q.    What is the Chicago Alliance?
11        A.    It's an organization that was formed in
12    1973 out of the Campaigns to Free Angela Davis
13    and All Political Prisoners.  Since then we've
14    been fighting for community control of the police
15    and freedom for political prisoners, [inaudible],
16    and people are otherwise wrongfully convicted.
17        Q.    Okay.  And are you also involved with
18    the Coalition to March on the DNC?
19        A.    Yes.  I'm officially the spokesperson.
20        Q.    What is the Coalition to March on the
21    DNC?
22        A.    It's a coalition of organizations like
23    the Chicago Alliance to fight for social justice,
24    against police crimes, against wars and genocide
```

Page 77

1    in other countries, as well as rights for

2    immigrants, rights -- reproductive rights, LGBTQ

3    rights, workers rights, so on and so forth.

4         Q.    And how did the Coalition come into

5    existence?

6         A.    When we heard that the DNC was coming

7    to Chicago, which was about April last year,

8    that's when we formed the Coalition.  We started

9    having press conferences around that time.  And

10   we've been gathering more organizations into the

11   Coalition since then.

12        Q.    Okay.  So now I'm going to ask some

13   questions about the permit applications that you

14   submitted.  As part of your involvement with

15   Chicago Alliance and the Coalition, have you been

16   involved in preparing and submitting parade

17   permits?

18        A.    Yes.

19        Q.    Did you submit the -- a parade permit

20   for a protest march on August 19, 2024?

21        A.    Yes, I did.

22        Q.    And was another such parade permit

23   submitted for a protest on August 22, 2024?

24        A.    Yes, it was.

Page 78

1       Q.    Okay.  So we're going to go through

2    these permits, one by one.  So I'm going start by

3    talking about your first permit application for

4    the August 19th application.

5       A.    Uh-huh.

6       Q.    So I'm going to be giving you what has

7    been marked as City's Exhibit 1, or

8    alternatively -- it would be --

9         ADMINISTRATIVE LAW JUDGE LOMBARDO:  You can

10   use it as City's 1.  That's fine.

11        MR. MASSOGLIA:  Okay.  City, would you

12   provide a copy for him, too?

13        ADMINISTRATIVE LAW JUDGE LOMBARDO:  You

14   don't have the City's exhibits.

15        MR. SPAHR:  We tendered them to Counsel

16   last night.

17        MR.  DIONNE:  They were part of our

18   [inaudible].

19        ADMINISTRATIVE LAW JUDGE LOMBARDO:  Do you

20   have extra copies 1, 2 --

21        MR. SPAHR:  Yeah.

22        ADMINISTRATIVE LAW JUDGE LOMBARDO:  Did you

23   get 4 already?

24        MR.  DIONNE:  Yeah, they have 4 already.

Page 79

1    I'll give them --

2         ADMINISTRATIVE LAW JUDGE LOMBARDO:  1, 2,

3    and 3.

4         MR.  DIONNE:  1, 2, and 3.

5         ADMINISTRATIVE LAW JUDGE LOMBARDO:  All

6    right.  Thank you.

7

8    BY MR. MASSOGLIA:

9         Q.   So I'm presenting you a copy of what's

10   marked City's Exhibit 1.  Do you recognize this

11   document?

12        A.   Yes.

13        Q.   What is that?

14        A.   It's the parade application for the

15   19th.

16        Q.   Okay.  And does this application list

17   the location of the assembly area as Union Park?

18        A.   Yes.

19        Q.   Is that also the listed location for

20   the disbanding area?

21        A.   Yes.

22        Q.   What was the proposed route as listed

23   on this application?

24        A.   So we're going to march down -- from

Page 80

1    Union Park down Ashland.  From Ashland, we're

2    going to turn onto Adams.  From there we're going

3    to walk on Damen until we get to Washington.

4    Then we're going into the Park 578, which is

5    within sight and sound of the United Center where

6    the DNC is going to be.

7         And we're going to have a second program

8    over there that we're going to march -- we're

9    going to exit Park 578 and march back to Union

10   Park and then disburse around 4:30 p.m.

11        Q.   Why did you apply for a parade permit

12   on August 19th along this route?

13        A.   So on August 19th, that's going to be

14   the starting day of the DNC.  We -- we're

15   planning to march just to be heard to raise up

16   our set of demands, which are an end to the USA

17   for Israel, community control over the police,

18   rights for immigrants, rights for LGBTQ people,

19   and reproductive rights, workers' rights to

20   organize and strike, and money for health care,

21   housing, education, jobs, the environment and not

22   for war, and finding the peace, justice, and

23   equality.

24        The reason we're applying for a permit is

Page 81

1    because a lot of people are [inaudible]

2    experience, being attacked by the police,

3    especially at high-profile events like this --

4         MR. SPAHR:  Objection.  Narrative.

5         MR. MASSOGLIA:  I can just --

6         ADMINISTRATIVE LAW JUDGE LOMBARDO:  Yeah.

7    Why don't you ask questions and solicit answers?

8    Sustained.

9         MR. MASSOGLIA:  Okay.  Sorry, Judge.

10

11   BY MR. MASSOGLIA:

12        Q.    So I think you said that this -- part

13   of reason you chose this route, would it take you

14   within sight and sound of the delegates gathering

15   at the Democratic National Convention?

16        A.    Yes.  That's what I'm saying.

17        Q.    And how do you know that?

18        A.    Because we've looked at the Park 578.

19   We know that you can see the United Center from

20   there, so we can be seen from there.  We know how

21   loud we can get when we're protesting, so we know

22   we can be heard from there as well.

23        Q.    And would this route also take you

24   within the sights and sound of the media covering

Page 82

1    the gathering of the delegates downtown?

2         A.    Yes.

3         Q.    Is your goal and the goal of the

4    coalition for the convention delegates and the

5    media to hear and see your demonstration?

6         A.    Yes, it is.

7         Q.    And is it your goal and the goal of the

8    Coalition for passerbys and the people of

9    Chicago, generally, to hear and see your

10   demonstration on the 19th?

11        A.    Yes.  Everyone who's enjoying it they

12   can.

13        Q.    Okay.  So I'm going to ask you some

14   questions about your communication with CDOT.

15   After you submitted the application for the

16   August 19th march, did anyone from the City of

17   Chicago contact you regarding your application?

18        A.    Yeah.  I got a call from --

19             MR. SPAHR:  Objection.

20             ADMINISTRATIVE LAW JUDGE LOMBARDO:  What's

21   the basis?

22             MR. SPAHR:  Hearsay, lack of foundation,

23   relevance.

24             ADMINISTRATIVE LAW JUDGE LOMBARDO:  I'll

Page 83

1    allow it.

2

3    BY MR. MASSOGLIA:

4        Q.    Do you want me to ask the question

5    again?

6        A.    Okay.

7        Q.    Did anyone from the City of Chicago

8    contact you regarding your application?

9        A.    Yeah, I got a call from the Susan

10    Pollack [phonetic] around January 16th.

11        Q.    Okay.  And what did -- and Susan

12    Pollack is with the Chicago Department of

13    Transportation to your knowledge?

14        A.    Yes.

15        Q.    What did she say to you in that phone

16    call?

17        A.    So the first thing she asked me was if

18    I had gotten a call from the CPD, from the

19    Chicago Police Department.  I told that I hadn't

20    gotten that call.  She said that they're asking

21    us to revise the parade route because of --

22    because of -- so that emergency vehicles could

23    have access to the area.

24        I asked her to put that in writing or send

Page 84

1      me an e-mail, which she did on that same day.

2           Q.    So she put -- so she submitted an

3      e-mail substantially saying the same thing --

4           A.    Uh-huh.

5           Q.    That there was a concern --

6               MR. SPAHR:  Objection.  Leading.

7               ADMINISTRATIVE LAW JUDGE LOMBARDO:  His

8      testimony stands.

9

10     BY MR. MASSOGLIA:

11          Q.    Did you respond to her e-mail?

12          A.    Yeah.  I responded a couple days later

13     just after consulting with some people in the

14     Coalition.  I said that we can limit the march to

15     two lanes of Ashland so that emergency vehicles

16     can get in and out.

17          Q.    Did she respond to your e-mail

18     asking -- sorry.  To clarify, did -- in your

19     e-mail, did you -- sorry, strike that.

20          Did she ever respond to your e-mail about

21     the proposed [inaudible] to only march along one

22     side of Ashland?

23          A.    No, she didn't.

24          Q.    Other than the issue with marching and

Page 85

1    asking whether or not CPD had contacted you, did

2    she ask any other questions?

3         A.    Not that I remember.

4         Q.    I'm handing you a piece of paper.  Do

5    you recognize this piece of paper?

6         A.    Yes.  This is the e-mail that I sent --

7    or the e-mail that she sent to me on the 16th and

8    then my response on the 18th of January.

9         Q.    And is this a true and accurate copy of

10   those e-mails?

11        A.    Yes.

12        Q.    And was there any other e-mail

13   correspondence between you and Susan that's not

14   represented here?

15        A.    No.

16        Q.    Okay.

17        MR. MASSOGLIA:  I'm marking this Alliance's

18   Exhibit 2.  And we would offer this into evidence

19   just as evidence of that correspondence.

20        ADMINISTRATIVE LAW JUDGE LOMBARDO:  Any

21   objection?

22        MR. SPAHR:  One moment, Judge.

23        MR. MASSOGLIA:  We can also [inaudible].

24        MR. SPAHR:  No objection, Judge.

Page 86

1          ADMINISTRATIVE LAW JUDGE LOMBARDO:  Okay.

2     Without objection, we'll call it Applicant's --

3     we'll call it 1.  Applicant's 1 because the City

4     Exhibit 1 that you referred to as --

5          MR. MASSOGLIA:  Well, did we submit a copy

6     of the ordinance or are we just taking judicial

7     notice to that?

8          ADMINISTRATIVE LAW JUDGE LOMBARDO:  That

9     was judicial notice, right.

10          MR. MASSOGLIA:  Okay.

11

12                    (Whereby, Applicant's Exhibit

13                     Number 1 having been admitted

14                     into evidence.)

15

16   BY MR. MASSOGLIA:

17          Q.   So can you just kind of read aloud what

18     you said in response to Ms. Pollack?

19          A.   Yeah.  So my response was:  Good

20     morning, Ms. Pollack.  When we marched from Union

21     Park before we only used two lanes of Ashland to

22     allow emergency vehicles to pass through.  Would

23     there still be a problem with the group if we

24     only used half of Ashland?

Page 87

1      Q.    So did she respond to that e-mail?

2      A.    No.

3      Q.    And did she in any other way contact

4   you to let know whether or not your proposed

5   modification would be acceptable or satisfy their

6   concerns about the emergency vehicles?

7      A.    No.

8      Q.    So you didn't receive any other contact

9   from Susan Pollack or anyone else at CDOT on that

10  issue?

11     A.    No.

12     Q.    Okay.  Did anyone from the Chicago

13  Police Department contact you about the first

14  parade application?

15     A.    No.

16     Q.    But Susan asked you if they had

17  contacted you?

18     A.    Yeah.  The way that she asked was -- it

19  wasn't an if they contacted you, she kind of

20  assumed that they had.

21         MR. SPAHR:  Objection.  Speculation.

22         ADMINISTRATIVE LAW JUDGE LOMBARDO:

23  Sustained.

24

Page 88

1    BY MR. MASSOGLIA:

2         Q.    To your knowledge have other groups

3    organizing marches during the DNC been contacted

4    by the CPD?

5         MR. SPAHR:  Objection.  Relevance, Judge.

6         ADMINISTRATIVE LAW JUDGE LOMBARDO:  What's

7    the relevance?

8         MR. MASSOGLIA:  We're just establishing

9    sort of what happened in this time period.  And

10   also kind of building our record that they were

11   treated differently than other groups applying --

12   for permits to march on the DNC in our opinion

13   because of their political viewpoint.

14        ADMINISTRATIVE LAW JUDGE LOMBARDO:  But the

15   first application was not in question, right?

16        MR. MASSOGLIA:  Based on Your Honor's

17   earlier rulings, it's not.

18        ADMINISTRATIVE LAW JUDGE LOMBARDO:  So it's

19   sustained.

20        MR. MASSOGLIA:  Okay.

21

22   BY MR. MASSOGLIA:

23        Q.    Okay.  So let's move onto the

24   application for the August 22nd march.  So this

Page 89

1    is going to be -- handing the witness, City's

2    Exhibit 3.  Mr. Guillory, I'm presenting you with

3    what's been marked as City's Exhibit 3.  Do you

4    recognize this document?

5        A.    Yes.

6        Q.    And is this a true and correct copy of

7    the parade permit application you submitted to

8    the Department of Transportation on January 2024

9    for the Coalition to march on the DNC's August

10   22nd march?

11       A.    Yes, it is.

12       Q.    And what is the name of the parade as

13   listed on that application?

14       A.    March on the DNC 2024 August 22, 2024.

15       Q.    Okay.  And when did you decide to --

16   when did you -- and by you I actually mean both

17   you and broadly the Coalition, decide to file an

18   application to march on that second date?

19       A.    So we decided to march throughout that

20   week on November -- around 19.  We have biweekly

21   meetings as a coalition.  So --

22       Q.    So what caused you to make that

23   decision?

24       A.    Yeah, after -- before October, we had

Page 90

1    been working with the Coalition to march in the

2    [inaudible].  We thought that this march is going

3    to be the much smaller of the two.

4         But after the genocide that has been funded

5    with our tax dollars --

6         MR. SPAHR:  Objection.  Relevance, Judge.

7         THE WITNESS:  I'm getting to it.

8         ADMINISTRATIVE LAW JUDGE LOMBARDO:  Well,

9    keep your comments to the questions.

10        THE WITNESS:  So after the event that have

11   been happening over the past [inaudible] in

12   Palestine, we decided to march on both the

13   opening and the closing of the Democratic

14   National Convention.

15        So we talked about applying for a permit

16   for both days in November of last year.

17

18   BY MR. MASSOGLIA:

19        Q.    So you plan was to march on both days

20   as two separate protests?

21        A.    Yes.

22        Q.    When you submitted your application for

23   the August 22nd march, were you aware at that

24   time whether your application for the August 19th

Page 91

1    march had been denied?

2        A.    We were not.

3        Q.    Okay.  So it's -- your thinking at that

4    time was if they granted both of these

5    applications you would have marched on both days?

6        MR. SPAHR:  Objection.  Calls for

7    speculation, relevance.

8        MR. MASSOGLIA:  It's just going to his

9    intent.  We're trying to get at what their --

10       ADMINISTRATIVE LAW JUDGE LOMBARDO:  Restate

11   it.

12

13   BY MR. MASSOGLIA:

14       Q.    So your plan was to march on both days?

15       A.    Yes.

16       Q.    Assuming that the permits -- if the

17   permits were granted?

18       A.    Yes.

19       Q.    Was the intended message that you were

20   going to convey the same for the August 19th and

21   the August 22 march --

22       MR. SPAHR:  Objection.  Leading.

23       ADMINISTRATIVE LAW JUDGE LOMBARDO:  I'll

24   allow it.  Go ahead.

1          THE WITNESS:  We are kind of assuming,

2     based on the way that the Democratic Party has

3     responded to marches that have happened before,

4     that our demands wouldn't have been met between

5     the 19th and the 22nd.  So we would be refreshing

6     those demands.

7          It would also just be a different -- it's

8     not the same day, right?  This is after four days

9     of discussion in the DMC.  So we'll have some

10    updates between the 19th and the 22nd.  So this

11    was just going to be two different protests in

12    terms of content.

13         MR. MASSOGLIA:  I'm handing the witness

14    what has been marked as -- oh, you took judicial

15    notice.  Of the ordinance.

16         ADMINISTRATIVE LAW JUDGE LOMBARDO:  That's

17    fine.

18         MR. MASSOGLIA:  It's going to have every

19    [inaudible], if that's okay?

20

21  BY MR. MASSOGLIA:

22         Q.   Kobi, can you read what's Section (s)

23    of the ordinance?

24         MR. SPAHR:  Objection as to relevance.

Page 93

1          MR. DIONNE:  Objection.

2          ADMINISTRATIVE LAW JUDGE LOMBARDO:

3     Sustained.

4

5  BY MR. MASSOGLIA:

6          Q.    So are you aware, when you submitted --

7     were you aware when you submitted these

8     applications that you could be fined or face

9     criminal charges for filing duplicate

10    applications?

11         MR. SPAHR:  Objection as to relevance,

12    Judge.

13         ADMINISTRATIVE LAW JUDGE LOMBARDO:  I'll

14    allow him to answer that.

15         THE WITNESS:  I wasn't aware at this time,

16    no.

17

18  BY MR. MASSOGLIA:

19         Q.    Does the possibility of being

20    imprisoned make you nervous about filing these

21    types of permits in the future?

22         MR. SPAHR:  Objection.  Relevance.

23         MR. MASSOGLIA:  Part of the constitutional

24    thing is whether or not the punitive nature of

1    the statue would deter a person of ordinary

2    fortitude.  So we're just [inaudible] evidence

3    [inaudible].

4         ADMINISTRATIVE LAW JUDGE LOMBARDO:  I've

5    allowed you to make a record.  I think it was

6    pretty clear with that point when he made his

7    record on the constitution issues.  So let's move

8    on.

9         MR. MASSOGLIA:  All right.  I just have one

10   further question.

11        ADMINISTRATIVE LAW JUDGE LOMBARDO:  Sure.

12        MR. MASSOGLIA:  And then I understand

13   you'll sustain the objection, too, but just for

14   the record.

15

16  BY MR. MASSOGLIA:

17        Q.   Does the possibility of fines make you

18   more nervous about filing these permits in the

19   future.

20        MR. SPAHR:  Objection.  Relevance.

21        ADMINISTRATIVE LAW JUDGE LOMBARDO:

22   Sustained.

23        MR. MASSOGLIA:  If I could quickly confer

24   with my colleagues.

Page 95

1              ADMINISTRATIVE LAW JUDGE LOMBARDO:  Sure.

2              MR. MASSOGLIA:  [Inaudible].

3              ADMINISTRATIVE LAW JUDGE LOMBARDO:  Sure.

4       That's fine.

5              MR. MASSOGLIA:  Your Honor, we have a

6       question, a procedural question.  We intend to

7       submit an affidavit on behalf of one witness who

8       couldn't be here because of work obligations.

9              ADMINISTRATIVE LAW JUDGE LOMBARDO:  Uh-huh.

10             MR. MASSOGLIA:  What's the procedure for

11      submitting?

12             ADMINISTRATIVE LAW JUDGE LOMBARDO:  Have

13      you given Counsel a copy of that?

14             MR. SPAHR:  Are we going to be able to

15      receive that today, though.

16             MR. MASSOGLIA:  Yeah, I've got another one.

17      [Inaudible].

18             ADMINISTRATIVE LAW JUDGE LOMBARDO:  Just

19      give him a copy of it and let him take a look at

20      it.

21             MR. MASSOGLIA:  Yeah.  Here we go.

22             ADMINISTRATIVE LAW JUDGE LOMBARDO:  Any

23      objection?

24             MR. SPAHR:  Judge, we're objecting on --

Page 96

1     this is by the Illinois Code of Civil Procedure,

2     one, and we are governed by the Department of

3     Administrative Hearing code and regulations.

4          Furthermore, it's only signed by the

5     affiant.  It's not notarized in any way as

6     required by administrative hearings code.  And as

7     such, this is all completely hearsay that's not

8     supported and should not be permitted.

9          Further, we cannot cross on any of the

10    issues that are contained within this statement.

11    So for all those reasons we object to it being

12    entered.

13         MR. MASSOGLIA:  Your Honor, I would doubt

14    that the administrative -- the rules in

15    Department of Administrative Hearings expressly

16    allow for testimony to be presented by affidavit.

17    And it is [inaudible].

18         And further Section [inaudible] of the

19    Illinois Code of Civil Procedure states unless

20    other [inaudible] provided [inaudible] in court

21    [inaudible] affidavit is required [inaudible] to

22    be verified.  [Inaudible] include a certification

23    of such affidavit in the county of [inaudible]

24    provided in this section.  And there nothing

Page 97

1    related to notarization --

2         ADMINISTRATIVE LAW JUDGE LOMBARDO:  Is it

3    certified?

4         MR. MASSOGLIA:  Yeah.  She certified it.

5         ADMINISTRATIVE LAW JUDGE LOMBARDO:  Then

6    what's the -- just give me -- what's the nature

7    of the affidavit.  I don't want to see a copy of

8    it yet.  Just kind of give me a summary.  Who is

9    this from and what's it about.

10        MR. MASSOGLIA:  It is from a former client

11   [inaudible] that was unable to be here today.

12        ADMINISTRATIVE LAW JUDGE LOMBARDO:  Uh-huh.

13        MR. MASSOGLIA:  She's going talk about the

14   new information that the affidavit provides is

15   two things.  One is that in November and

16   January -- November of 2023 and January of 2024,

17   this group separately [inaudible] applied for a

18   separate use permit from the Chicago Park

19   District.

20        It goes to the fact that these applications

21   are not duplicative.  They were conceived of as

22   different events [inaudible] November of last

23   year.

24        ADMINISTRATIVE LAW JUDGE LOMBARDO:  Uh-huh.

1          MR. MASSOGLIA:  Further, it indicates

2     her -- she was involved in preparing the

3     applications, indicates her understanding of what

4     is substantially similar, which, again, goes to

5     the determination and the constitutional record

6     [inaudible] ordinance.

7          I can -- there's certainly other things in

8     here.  But I will provide Your Honor a copy of

9     you'd like [inaudible].

10         MR. SPAHR:  And I would say at this time --

11    I would be objecting on the grounds that they

12    can't cross examine the witness.  We wouldn't be

13    willing to take a continuance of the case for

14    that cross examination to be carried out --

15         MR. MASSOGLIA:  And [inaudible] verify

16    events from the Chicago Department of

17    Transportation that they would not be accepting

18    2024 applications until the middle of January,

19    which is also contrary to the code and other

20    incidents of [inaudible] discrimination in regard

21    to my client.

22         MR. SPAHR:  Judge, all of which is not at

23    issue here today.  It's beyond --

24         ADMINISTRATIVE LAW JUDGE LOMBARDO:  Right.

Page 99

1        MR. SPAHR:  -- the scope of today's

2    hearing.

3        ADMINISTRATIVE LAW JUDGE LOMBARDO:  I'll

4    accept the affidavit.  I will not consider it and

5    I'll give it the weight as far as the

6    determination for today's issue.

7        MR. MASSOGLIA:  Are we going to mark it as

8    an exhibit?

9        ADMINISTRATIVE LAW JUDGE LOMBARDO:  Yeah,

10   go ahead and mark it Applicant's 2.  So it's part

11   of the record, but it's not really evidence in my

12   consideration.

13       MR. MASSOGLIA:  Thank you, Your Honor.

14       ADMINISTRATIVE LAW JUDGE LOMBARDO:  You're

15   welcome.  All right.  Thank you.

16       MR. MASSOGLIA:  And then just one or two

17   quick final questions of this witness.

18       ADMINISTRATIVE LAW JUDGE LOMBARDO:  Go

19   ahead, yeah.  [Inaudible].

20

21   BY MR. MASSOGLIA:

22       Q.   Kobi, to the best of your knowledge did

23   the Coalition submit applications for the -- to

24   the Chicago Police Department for your march on

Page 100

1    August 19th and August 22nd?

2         MR. SPAHR:  Objection.  Vague and

3    relevance.

4         ADMINISTRATIVE LAW JUDGE LOMBARDO:  Repeat

5    it again, please.

6

7  BY MR. MASSOGLIA:

8         Q.    To the best of your knowledge, did the

9    Coalition submit an application to the Chicago

10   Parks District for your march on August 19th?

11        ADMINISTRATIVE LAW JUDGE LOMBARDO:  I'll

12   allow it.

13        A.    Yes, we did.

14        Q.    And did you submit an application to

15   the Chicago Park District on August 22nd?

16        A.    Yes, we did.

17        Q.    And do you know -- when did you submit

18   those applications to the Chicago Park District?

19        A.    Off the top of my head, I don't know

20   the exact dates, but it was a similar time frame

21   that we submitted the ones to the CDOT.

22        MR. MASSOGLIA:  No further questions for

23   this witness, Your Honor.

24        ADMINISTRATIVE LAW JUDGE LOMBARDO:  Has

Page 101

1    somebody got a phone or something going?

2         MR. SPAHR:  It sounds like it might be a --

3         ADMINISTRATIVE LAW JUDGE LOMBARDO:  Is it

4    outside?

5         MR. MASSOGLIA:  Yeah.

6         ADMINISTRATIVE LAW JUDGE LOMBARDO:  Any

7    cross for this witness?

8         MR. SPAHR:  Yes.

9

10                   CROSS EXAMINATION

11   BY MR. SPAHR:

12        Q.    Mr. Guillory.

13        A.    Uh-huh.

14        Q.    The organization submitted an

15   application that was received by CDOT on January

16   10, 2024, correct?

17        A.    We submitted it, I think, January 8th.

18   But yes, that is correct.

19        Q.    Well, they responded with the denial of

20   that initial application on January 22, 2024,

21   correct?

22        A.    I know that now but I didn't see it on

23   the day.

24        Q.    All right.  And the organization, then,

Page 102

1      eight days later applied again, did you not?

2          A.    We did, yes.

3          Q.    CDOT specifically in the e-mail that

4      you submitted -- or that Counsel submitted as

5      Number 1, advised you to change the route in that

6      e-mail; is that correct?

7              MR. SPAHR:  Objection.  Foundation

8      [inaudible].

9              ADMINISTRATIVE LAW JUDGE LOMBARDO:

10     Overruled.  He's just testifying about the change

11     in the route.

12             THE WITNESS:  Yes, we did.  They did and we

13     responded with modified route and we didn't get a

14     response back.

15

16     BY MR. SPAHR:

17         Q.    In fact, she said please submit a

18     modified route; that's correct?

19         A.    Yes, it is correct.  And we did that

20     and we didn't get a response.

21         Q.    And then your organization submitted a

22     second application that was received on January

23     30, 2024; is that correct?

24         A.    That is correct, yes.

Page 103

1          Q.    And that second application had the

2     same route as the first application, did it not?

3          A.    Yes, it did.

4          MR. SPAHR:  Nothing further, Judge.

5          ADMINISTRATIVE LAW JUDGE LOMBARDO:

6     Redirect?

7          MR. MASSOGLIA:  No further questions, Your

8     Honor.

9          ADMINISTRATIVE LAW JUDGE LOMBARDO:  Do you

10    intend to recall?

11         MR. MASSOGLIA:  No.  And I think -- I feel

12    bad for Mr. Gallardo, but we're -- I don't know

13    that we'll be able to offer anything unless Your

14    Honor will allow proof in the same manner as

15    [inaudible] affidavit.

16         The reason for recalling him would be to

17    ask questions about the appendix to the affidavit

18    indicating apparently and contrary to law that

19    the Coalition could not apply for a permit until

20    the middle of January.

21         ADMINISTRATIVE LAW JUDGE LOMBARDO:  I don't

22    see how that would be relevant.

23         MR. MASSOGLIA:  I'd like --

24         ADMINISTRATIVE LAW JUDGE LOMBARDO:  If

1      you'd like to recall him, well, I'll him come in.

2          MR. MASSOGLIA:  Yeah, we would like to do

3      that.

4          ADMINISTRATIVE LAW JUDGE LOMBARDO:  All

5      right.  Let's have him come in.  Sir.  No

6      intention to recall this witness, any of the

7      parties?

8          MR. SPAHR:  No, Judge.

9          MR. MASSOGLIA:  Not ours.

10          ADMINISTRATIVE LAW JUDGE LOMBARDO:  Okay.

11     You're free to stay or go.  Whatever you choose.

12          THE WITNESS:  Okay.

13          MR. MASSOGLIA:  And after this we have

14     [inaudible].

15          ADMINISTRATIVE LAW JUDGE LOMBARDO:  Okay.

16     Sir, come on and have a seat over here, please.

17     And talk to that microphone.  You're under oath

18     from your previous testimony, sir, do you realize

19     that?

20          MR. GALLARDO:  Yes.

21          ADMINISTRATIVE LAW JUDGE LOMBARDO:  Okay.

22

23                    DIRECT EXAMINATION

24     BY MR. MASSOGLIA:

1          Q.    Mr. Gallardo, hello again.  I promise

2     we'll get you out of here soon.  I just have a

3     couple of questions about permit applications

4     submitted in 2023, which then got resubmitted,

5     same organization, same protest, same date.  It

6     was denied essentially.  Do you recall that

7     application at all?

8          MR. SPAHR:  Objection.

9          ADMINISTRATIVE LAW JUDGE LOMBARDO:  Are you

10    referring to this -- which permit are you

11    referring to or which application?

12         MR. MASSOGLIA:  In 2023, and this is

13    actually -- in 2023 the Coalition submitted an

14    untimely application for the same thing that they

15    did for their first application this time.

16         ADMINISTRATIVE LAW JUDGE LOMBARDO:  Okay.

17         MR. MASSOGLIA:  And they were told it's too

18    early, you can't apply till the middle of

19    January.

20         ADMINISTRATIVE LAW JUDGE LOMBARDO:  Okay.

21    So you're referring to an application from

22    this --

23         MR. MASSOGLIA:  [Inaudible] exact same

24    thing with the same dates.

Page 106

1          ADMINISTRATIVE LAW JUDGE LOMBARDO:  Do you

2     understand that?  Why don't you restate the

3     question.

4

5     BY MR. MASSOGLIA:

6          Q.    So the first application that was

7     denied was in January; do you remember that

8     application from my client?

9          A.    Are you referring --

10         MR. SPAHR:  Objection.  Your Honor

11    indicated that you are not considering the weight

12    of this affidavit; therefore, any testimony

13    regarding this is irrelevant.

14         ADMINISTRATIVE LAW JUDGE LOMBARDO:  Well,

15    no.  We've already let him have some testimony on

16    it.  You can answer the question.

17         THE WITNESS:  Are you referring to the

18    application submitted on the 10th; on January

19    10th?

20

21    BY MR. MASSOGLIA:

22         Q.    Yes, that's correct.

23         A.    Yes, I recall that submittal.

24         Q.    And do you have a copy of that

Page 107

1    application in front of you?

2         MR. SPAHR:  The application marked as

3    City's Exhibit 1?

4         MR. MASSOGLIA:  Yeah.

5         THE WITNESS:  Okay.  I have it in front of

6    me.

7

8    BY MR. MASSOGLIA:

9         Q.   And what's the date on that

10   application?

11        A.   It was taken in on January 10th of this

12   year.

13        Q.   No, what's the date indicated by the

14   applicant?

15        A.   That they put on their application?

16        Q.   Yes, that's correct.

17        A.   On the top line here where it says

18   date, it says August 7, 2023.

19        Q.   And do you recall receiving [inaudible]

20   this application in 2023?

21        MR. SPAHR:  Objection.  Relevance.

22        ADMINISTRATIVE LAW JUDGE LOMBARDO:  I'll

23   let him answer it.

24        THE WITNESS:  No, I don't recall this

Page 108

1     specific application that was submitted in

2     August.

3

4   BY MR. MASSOGLIA:

5        Q.   Did you or to your knowledge, anyone

6     else within CDOT write a letter to the applicant

7     indicating that they can't reapply until the

8     middle of January?

9        MR. SPAHR:  Objection, Judge.  Calls for

10    hearsay and speculation.  And lack of foundation.

11       ADMINISTRATIVE LAW JUDGE LOMBARDO:  I mean,

12    if he knows I think he can answer.

13       THE WITNESS:  No, I don't recall.

14

15  BY MR. MASSOGLIA:

16       Q.   Is there any rule within the code that

17    someone cannot apply for a parade permit until

18    the middle of January?

19       MR. SPAHR:  Objection as to relevance and

20    calls for a legal conclusion on behalf of the

21    witness.

22       ADMINISTRATIVE LAW JUDGE LOMBARDO:  Well, I

23    mean, he enforces the ordinance so he can

24    certainly give an opinion on what he does with

Page 109

1      applications that are filed early in the year.

2           THE WITNESS:  So unless the application is

3      for the month of January, we wouldn't take it in

4      until the year that they are requesting.

5           So if you are applying for an event in

6      2024, you couldn't -- if your event is in

7      January, then we would allow the -- accepting

8      that application in 2023.  Otherwise we would not

9      accept that application until the first business

10     day in January of 2024.

11

12   BY MR. MASSOGLIA:

13        Q.    Okay.  And there's priority given to

14     earlier applications; is that right?

15        A.    Well, it's essentially a first come

16     first serve basis.  So if two applications come

17     in for the same location on the same day, we

18     would have to consider the one that was submitted

19     first.

20        Q.    And you said that you don't remember

21     writing a letter to Ms. Bettino, the Coalition in

22     2023.  Is your memory exhausted as to that topic?

23        A.    I don't understand what you mean.  I

24     mean, I don't recall whether or not we did or did

Page 110

1    not have any contact regarding that.

2          MR. MASSOGLIA:  Judge, can I show him a

3    copy of the note and ask him if that's his

4    handwriting?

5          ADMINISTRATIVE LAW JUDGE LOMBARDO:  Again,

6    what's the purpose?

7          MR. MASSOGLIA:  [Inaudible].

8          MR. SPAHR:  Judge, we'd renew our

9    objection.

10         ADMINISTRATIVE LAW JUDGE LOMBARDO:  I think

11   you've made the point that you're making a

12   constitutional argument.

13         MR. MASSOGLIA:  No further questions, Your

14   Honor.

15         ADMINISTRATIVE LAW JUDGE LOMBARDO:  Thank

16   you.  Anything else?

17         MR. MASSOGLIA:  Oh, yes, thank you for your

18   time today.

19         ADMINISTRATIVE LAW JUDGE LOMBARDO:  All

20   set?  All right, sir.  You're excused, you're

21   free to go.

22         MR. GALLARDO:  Okay.  All right.  Thank

23   you.

24         ADMINISTRATIVE LAW JUDGE LOMBARDO:  Thank

1    you.  Appreciate it.  Any other witnesses?

2         MR. MASSOGLIA:  Yes, we have one further

3    witness [inaudible].

4         ADMINISTRATIVE LAW JUDGE LOMBARDO:  Okay.

5    You can call the witness.

6         MR. MASSOGLIA:  [Inaudible].

7         ADMINISTRATIVE LAW JUDGE LOMBARDO:  Good

8    morning, sir.  Just sit in that seat and kind of

9    pull yourself up to that microphone.  Just direct

10   your voice to that.  You don't really need to

11   yell or anything.  Just kind of keep your voice

12   raised, okay?

13        MR. IOSBAKER:  I'll try.

14        ADMINISTRATIVE LAW JUDGE LOMBARDO:  And

15   what is your name?

16        MR. IOSBAKER:  Joe Iosbaker.

17        ADMINISTRATIVE LAW JUDGE LOMBARDO:  And

18   spell your last name.

19        MR. IOSBAKER:  I-O-S-B-A-K-E-R.

20        ADMINISTRATIVE LAW JUDGE LOMBARDO:  Raise

21   your hand for me.  Do you swear or affirm

22   testimony you're about to give will be the truth,

23   the whole truth, and nothing but the truth?

24        MR. IOSBAKER:  I do.

Page 112

1       ADMINISTRATIVE LAW JUDGE LOMBARDO:  All

2   right.  Counsel, you can proceed.

3

4                   DIRECT EXAMINATION

5

6   BY MS. SPREADBURY:

7       Q.    Good morning, Mr. Iosbaker.  Are you a

8   member of the Chicago Alliance Against Racist &

9   Political Repression?

10      A.    I am.

11      Q.    I'm going to refer to this Chicago

12  Alliance Against Racist & Political Repression as

13  the Alliance; is that okay?

14      A.    Yes, that's fine.

15      Q.    What is the Alliance?

16      A.    It's an organization that has been

17  around since 1973.  Originally created to fight

18  for freedom for political prisoners like Angela

19  Davis.  Angela Davis actually was one of the

20  founders.

21          And over its 50 years it has mostly focused

22  on organizing against racist policing and you

23  know, to free not only political prisoners, but

24  all the wrongfully convicted.

Page 113

1      Q.    And how long have you been a member of

2    the Alliance?

3      A.    This is my tenth year.

4      Q.    And how does the Alliance relate to the

5    Coalition to March on the DNC [inaudible]?

6      A.    So the Alliance is the local group that

7    initiated the first meeting of this Coalition.

8      Q.    And are you a part of the

9    decision-making team for the Coalition?

10      A.    Yes.  We have Coalition meetings where,

11    you know, we -- yeah, all the Coalition partners.

12    I'm part of the Coalition meetings.

13      Q.    And did the Coalition intend to only

14    march on the DNC for one day?

15      A.    No.

16      Q.    Why did the Coalition want to march on

17    the DNC on multiple days?

18      A.    So there are two reasons.  One is

19    that -- initially we'd only thought about

20    marching on one day.  But as the genocide in Gaza

21    unfolded in October and November --

22      MR. SPAHR:  Objection, Your Honor.

23    Nonresponsive.

24      ADMINISTRATIVE LAW JUDGE LOMBARDO:  Let's

Page 114

1    just keep the answers to the point of the

2    question, please.

3        THE WITNESS:  So we decided to march on a

4    second day.

5

6    BY MS. SPREADBURY:

7        Q.    And has the Coalition applied for

8    parade permits to march on the DNC 2024?

9        A.    Yes.

10       Q.    And are you aware of any parade permits

11   being denied?

12       A.    Yes.

13       Q.    Do you know why the August 22nd

14   application was denied?

15       MR. SPAHR:  Objection.  Misstates evidence.

16   And relevance, Judge.

17       MS. SPREADBURY:  It goes to why -- this

18   goes directly to --

19       ADMINISTRATIVE LAW JUDGE LOMBARDO:  I don't

20   think there's any evidence that an August 22nd

21   permit has been denied.

22

23   BY MS. SPREADBURY:

24       Q.    Did the Coalition receive a letter

Electronically signed by Susan Bonomo (001-416-118-4005)            9e48c720-7895-4790-beff-2f911e29633b

Page 115

1    regarding their August 22, 2024 application?

2        A.    Yes.

3        Q.    And what did that letter say?

4        A.    It denied us a permit.

5        Q.    And why did it say it denied the

6    permit?

7        A.    Because of some language regarding the

8    request being duplicitous.

9        Q.    And do you know what means?

10       A.    Not really, no.

11       Q.    Did the Coalition intend for these

12   applications to be duplicitous?

13       MR. SPAHR:  Objection.  Calls for

14   speculation,

15       MS. SPREADSBURY:  I'll rephrase.

16

17  BY MS. SPREADBURY:

18       Q.    Did the Coalition intend for these --

19   for the application to be a repeat of the first

20   because you only wanted to march [inaudible]?

21       MR. SPAHR:  Objection.  Leading.

22       ADMINISTRATIVE LAW JUDGE LOMBARDO:

23   Sustained.

24

Page 116

1   BY MS. SPREADBURY:

2       Q.   Did the Coalition intend to also march

3   on August 22nd?

4       A.   Yes.

5       Q.   So when you applied for the August 22nd

6   march, were you repeating the August 19th march?

7       MR. SPAHR:  Objection.  Leading.

8       ADMINISTRATIVE LAW JUDGE LOMBARDO:  Answer

9   the question.

10      THE WITNESS:  We were not repeating the

11  August 19th march.

12

13  BY MS. SPREADBURY:

14      Q.   Mr. Iosbaker, do you have experience

15  planning large demonstrations in Chicago?

16      A.   I do.

17      Q.   Can you elaborate on your experience?

18      A.   So I have been a peace activist and a

19  trade unionist and now a member of the Alliance

20  since I was 18 years old.  I've been involved in

21  large demonstrations, including the march against

22  NATO when they were here in 2012.

23      Q.   Did you help organize any large

24  demonstrations in the past?

Page 117

1          MR. SPAHR:  Objection.  Relevance, Judge.

2          ADMINISTRATIVE LAW JUDGE LOMBARDO:  I'll

3     allow it.

4          THE WITNESS:  Yes, I've helped organize

5     quite a few.

6

7  BY MS. SPREADBURY:

8          Q.    What are some of those examples?

9          A.    One of the ones that's best known is I

10     was the advisor to the student organization at

11     the University of Illinois at Chicago that

12     marched against Donald Trump when he tried to

13     speak on our campus in March of 2016.

14          Q.    And do you have any other experience of

15     organizing large protests that had parade

16     applications?

17          A.    Yes.  The march against NATO we had a

18     parade application and also the Chicago Alliance

19     had a parade application for a march we did in

20     2015.

21          Q.    And what are some of the things that

22     you, in your organizing experience, implement to

23     help keep parades safe?

24          MR. SPAHR:  Objection.  Relevance.

Page 118

1      ADMINISTRATIVE LAW JUDGE LOMBARDO:  Ma'am,

2    where are you going with this stuff, Counselor?

3      UNIDENTIFIED ATTORNEY:  Just to show that

4    he has a history and experience of organizing

5    parade apl -- of organizing in Chicago.

6      MR. SPAHR:  Judge, it's beyond the scope of

7    today's hearing, though.  The only thing at issue

8    is the duplicative nature.  None of this is

9    relevant.

10      MR. MASSOGLIA:  I'd like to object to

11    Counsel's laughter in the background.

12      ADMINISTRATIVE LAW JUDGE LOMBARDO:  You

13    have to what?

14      MR. MASSOGLIA:  I said I'd like to object

15    to Counsel's laughing in the background of my --

16      ADMINISTRATIVE LAW JUDGE LOMBARDO:  Oh, I'm

17    sorry.  I didn't hear any laughing.  Audience,

18    please keep comments and laughter to yourselves.

19    All right?

20      As far as the objection.  I don't think

21    it's relevant.  I was giving you some leeway to

22    see where you're going with this.  I mean, it

23    doesn't seem like you're going anywhere to the

24    point, all right?  So I think he got enough

Page 119

1    testimony to show that he does have some

2    experience --

3          UNIDENTIFIED ATTORNEY:  Okay.  I'll move

4    on.

5          ADMINISTRATIVE LAW JUDGE LOMBARDO:  --

6    forming parades and so forth.  But yeah, move on,

7    please.

8          UNIDENTIFIED ATTORNEY:  Okay.  Thank you,

9    Your Honor.

10

11   BY MS. SPREADBURY:

12        Q.    Why -- do you think it's -- why did the

13   Coalition apply to get a parade permit?

14        A.    Because we're determined that this

15   mobilization would be family friendly.

16        Q.    What do you mean by family friendly?

17        A.    Literally, that families can bring

18   little kids in strollers and other communities

19   that are concerned about safety, you know.  We

20   have -- in our Coalition, we have an organization

21   of undocumented immigrants.  In our Coalition, we

22   have people who are recently released from

23   prison.

24          And so we're -- we have a number of

Page 120

1    constituent groups -- constituent groups that are

2    very concerned that they be safe in the protest.

3        Q.   Changing gears just a little bit, are

4    you aware of any alternate routes --

5        MS. SPREADBURY:  Can I confer with counsel

6    for just one second?

7        ADMINISTRATIVE LAW JUDGE LOMBARDO:  Sure.

8

9  BY MS. SPREADBURY:

10       Q.   Just a few more questions.

11   Mr. Iosbaker, do you know of any groups planning

12   on protesting the DNC whose application got

13   approved?

14       MR. SPAHR:  Objection.

15       ADMINISTRATIVE LAW JUDGE LOMBARDO:

16   Sustained.

17       UNIDENTIFIED ATTORNEY:  No further

18   questions --

19       MR. MASSOGLIA:  Your Honor, we have sort of

20   two other questions in terms of how conclude our

21   presentation.  The first would be, we'd like to

22   get into the record evidence that the Chicago

23   Police Department called another applicant and

24   did not call our client.

1         And the reason we would like to -- we have

2    two routes for doing that.  We have the

3    transcript from another parade hearing, which we

4    could -- it's certified, we could -- if you could

5    take notice of it.

6         Or we could call Mr. Thayer, Indie Thayer,

7    who is right there, who was actually present and

8    the applicant in that incidence on behalf of his

9    organization.

10        ADMINISTRATIVE LAW JUDGE LOMBARDO:  Uh-huh.

11   Well, let's do --

12        MR. MASSOGLIA:  I don't want to belabor

13   things --

14        ADMINISTRATIVE LAW JUDGE LOMBARDO:  Let's

15   do this.  Let's get the cross done on this

16   witness --

17        MR. MASSOGLIA:  Excellent point, Judge.

18        ADMINISTRATIVE LAW JUDGE LOMBARDO:  Thank

19   you.  Any cross for this witness?

20        MR. SPAHR:  No cross based on that, Judge.

21        ADMINISTRATIVE LAW JUDGE LOMBARDO:  All

22   right.  Okay, now, what is it that you're trying

23   to do?

24        MR. MASSOGLIA:  We'd like to either

Page 122

1    introduce the transcript into the record or call

2    a witness who can speak to one precise and

3    specific issue about whether or not CPD

4    communicated with other applicants in a way that

5    they not with our client.

6         ADMINISTRATIVE LAW JUDGE LOMBARDO:  Denied.

7    I don't think it's relevant here.  You have your

8    standing objection -- or you have your response

9    to the standing objections to your previous

10   attempts to get that information in.  So you can

11   do that what you may on the record, okay?

12        MR. MASSOGLIA:  Okay.

13        ADMINISTRATIVE LAW JUDGE LOMBARDO:  You can

14   file on appeal.  All right.  Anything else for

15   this witness?

16        UNIDENTIFIED ATTORNEY:  No, Your Honor.

17        ADMINISTRATIVE LAW JUDGE LOMBARDO:  You're

18   excused, sir.  You can either leave or you're

19   free to stay.  Anything else?

20        MR. MASSOGLIA:  We rest, Your Honor.

21        ADMINISTRATIVE LAW JUDGE LOMBARDO:

22   Closing?

23        MR. SPAHR:  If we could just have a moment.

24        ADMINISTRATIVE LAW JUDGE LOMBARDO:  Sure.

Page 123

1          MR. DIONNE:  Can we take a couple moments,

2     Judge, before we do closing.

3          ADMINISTRATIVE LAW JUDGE LOMBARDO:

4     Absolutely.  Take a recess?

5          MR. SPAHR:  Yes.

6          ADMINISTRATIVE LAW JUDGE LOMBARDO:  All

7     right.  How about ten minutes.  Whatever you guys

8     want.

9          MR. SPAHR:  Sounds good.

10         ADMINISTRATIVE LAW JUDGE LOMBARDO:  How

11    about this.  We'll return at 11:00 a.m.

12         MR. SPAHR:  Okay.  Thank you.

13

14              (A SHORT RECESS WAS TAKEN.)

15

16              ADMINISTRATIVE LAW JUDGE LOMBARDO:  Okay.

17    Reconvening for March on the DNC 2024, Docket

18    24PA000003.  We had taken a short break.  Seems that

19    all the testimony is completed, both the parties have

20    rested and we're into closing arguments, correct.

21              MR. SPAHR:  Yes.

22              MR. MASSOGLIA:  Yes, Your Honor.

23              ADMINISTRATIVE LAW JUDGE LOMBARDO:  City,

24    closing argument?

Page 124

1          MR. MASSOGLIA:  Yes, Judge.  In closing,

2     the City argues that none of the testimony relayed

3     from the Petitioner in this matter is relevant as to

4     the Department of Transportation's consideration of

5     the permit applications.

6          Assistant Commissioner Bryan Gallardo

7     testified today as to the two applications and his

8     review of the process.  When reviewing the

9     applications side-by-side, the first application

10    marked as City's Exhibit 1 was received by CDOT on

11    January 10, 2024.  City's Exhibit 3 is a permit

12    application submitted by the Petitioner on January

13    30, 2024.

14         Reviewing these line by line and pursuant

15    to Bryan Gallardo's obligations under the ordinance,

16    looking at the black letter and the words of the

17    application, they are identical.  They are submitted

18    by the same sponsoring organization, Chicago Alliance

19    Against Racist & Political Repression.  Submitted by

20    the same parade organizer.  Submitted with the same

21    exact parade route and the same number of estimated

22    participants.

23         Bryan Gallardo even went on to testify as

24    to his opinion and understanding of what is

Page 125

1   considered a unit when considering these applications

2   and on Page 2 of Exhibit 1 and Exhibit 3, the

3   Petitioner indicates the same amount of units.

4          When reviewing the ordinance at its plain

5   language, it is clear that no person or organization

6   may submit more than one application for a parade

7   substantially similar in theme or units.  Here we

8   have the exact same units and the same organization

9   submitting their request.

10         As to (d)(3) where a person or

11  organization submits multiple applications for the

12  same parade date or a parade substantially similar in

13  units or theme described or requesting an alternate

14  date or route, whether by using one name or multiple

15  names, that person or organization shall not be

16  eligible for such a permit and shall be in violation

17  of the ordinance.

18         The facts are clear here that the two

19  applications are submitted by the same organization

20  with just an alternate date.

21         The commissioner is authorized, pursuant

22  to (d)(4), to disregard the application that is a

23  basis of the -- submitted in violation of the

24  ordinance.

Page 126

1          The City would ask that this court affirm

2     the denial sent by the Department of Transportation

3     on February 1, 2024, in regard to the application

4     submitted by the Petitioner on January 30th.

5          ADMINISTRATIVE LAW JUDGE LOMBARDO:  All

6     right.  Thank you.  Applicant, final comments?

7          MR. MASSOGLIA:  Thank you, Your Honor.  I

8     believe we have a post-hearing motion to discuss

9     afterwards, but I'll give my close first.  I thank

10    the Court for its patience with us presenting our

11    case, which is about something really important.

12          It's about an organization of people who

13    want to change the world for the better, who since

14    2023 have been planning for multiple parades at the

15    2024 Democratic National Convention.

16          They applied [inaudible].  They were told

17    incorrect law by Chicago Department of

18    Transportation.  They saved the application and

19    applied again in January.  Their application is

20    rejected on similar grounds as other applications

21    have been rejected for marches on the DNC.  And they

22    submit another one.

23          They hadn't realized that their first

24    application was rejected at the time period they sent

Page 127

1    the second application, and eventually it's denied as

2    duplicative.

3            You know, they didn't know, but they know

4    now, that they can be fined or imprisoned for

5    submitting duplicative applications.  That is

6    offensive to the Constitution when my clients just

7    want to spread a hopeful message in a time when the

8    world is full of misery.

9            They want people from all ages, abilities,

10   walks of life to be together in a place where they

11   can feel safe and actually be safe expressing their

12   rights most cherished in this country under the First

13   Amendment.

14           So the marches, themselves, are inherently

15   different.  They are on different dates, they have

16   different purposes, they are at different postures of

17   the Democratic National Convention.

18           And so what we're left with is we're left

19   with a vague statute as to the Subsection (d), which

20   is addressing duplicative.  It is completely

21   impossible to understand how a person, an applicant,

22   somebody who is organizing and carrying a day job,

23   could possibly make sense of that when they're -- it

24   was pretty difficult to even make and understand --

Page 128

1    pretty difficult to make an understanding from the

2    testimony that you've heard today.

3           The statute is -- seems to be quite overly

4    restrictive in terms of the time, place, and manner.

5    If read to its absurd conclusion you can never have

6    two parades on the same topic around the same event,

7    even if they have different purposes.  You get sort

8    of one parade and you're done.  And if you apply --

9    you can't apply again or maybe you get imprisoned,

10   that can't be right.

11          And I understand that this Court isn't

12   ruling on the constitutional questions, and I

13   appreciate being allowed to make this record.  But

14   what I think is --

15          The final constitutional point I'd like to

16   make is that the statute was unevenly applied based

17   on the viewpoint of the applicants.  There's no call

18   from Chicago Police Department, there was no followup

19   from Ms. Pollack at Chicago Department of

20   Transportation after my clients proposed an alternate

21   route.

22          And so what they're left with is this

23   scenario where, you know, they submitted a similar

24   application for a different event.  It's been denied

Page 129

1    as duplicative and now the Court is -- this Court

2    here is going to rule on whether or not that denial

3    was proper.

4              I think the most important thing, one of

5    the most important things for the Court to consider

6    in making that analysis is whether or not the statute

7    was violated on its face by Mr. Gallardo's failure to

8    consult with the Chicago Police Department about the

9    second application.

10             Subsection (f) clearly indicates that they

11   shall consult and shall provide copies of

12   documentation when there is a permit application.

13   [Inaudible] qualifier is shall consult.  I can

14   actually read the direct language in.

15             Yeah, "The commissioner shall investigate

16   the facts set out in the application, in consultation

17   with the police department, which shall be sent

18   copies of the application immediately upon receipt."

19   That's mandatory.  And none of this had happened.

20             There's testimony that didn't happened.

21   That is enough to render this appeal, this decision

22   annuled and that the Court can rule on that ground

23   alone, that this appeal isn't proper.  And give my

24   clients a chance to spread their message [inaudible].

Page 130

1            ADMINISTRATIVE LAW JUDGE LOMBARDO:  Okay.

2    Thank you.  Appreciate it.  You said there was some

3    post-trial motions?

4            MR. MASSOGLIA:  Oh, yes.  We're --

5    frankly, I don't have the record.  Counsel, in his

6    closing argument, sort of got -- went into the units

7    question and I believe you had indicated the door

8    was -- I believe that you had indicated was not

9    relevant or outside of the scope or something --

10           ADMINISTRATIVE LAW JUDGE LOMBARDO:  Yeah,

11   I don't remember hearing about it in the direct

12   examination is what I had said.  Maybe I was wrong,

13   but I didn't remember hearing that.

14           MR. MASSOGLIA:  So we would -- I guess,

15   then, really what we would like is to unfortunately

16   burden Mr. Gallardo again ask him more questions

17   about what units means and whether parades are

18   similar or not.

19           ADMINISTRATIVE LAW JUDGE LOMBARDO:  I

20   don't think it's necessary.

21           MR. MASSOGLIA:  Thank you.

22           ADMINISTRATIVE LAW JUDGE LOMBARDO:  I

23   think the record is complete.

24           MR. MASSOGLIA:  Thank you, Your Honor.

Page 131

1              ADMINISTRATIVE LAW JUDGE LOMBARDO:  All

2    right.  Anything else?

3              MR. MASSOGLIA:  No, Judge.

4              ADMINISTRATIVE LAW JUDGE LOMBARDO:  Okay.

5    Under the ordinance I have 48 hours to render my

6    decision.  I'll reduce it to writing and send copies

7    to both parties.

8              MR. MASSOGLIA:  Thank you, Judge.

9              MR. SPAHR:  Thank you, Judge.

10             ADMINISTRATIVE LAW JUDGE LOMBARDO:  Thank

11   you.  Appreciate it.  And everybody in the audience,

12   I appreciate your appearance.  You were all very good

13   as far as keeping the noise down and not disrupting

14   the process.  So I appreciate that.  Thank you.

15

16                    (END OF PROCEEDING)

17

18

19

20

21

22

23

24

Page 132

1        I, Susan Bonomo, do hereby certify or affirm

2    that I have impartially transcribed the foregoing

3    from an audiotape record of the above-captioned

4    proceedings to the best of my ability.

5

6    _____

7                    Susan Bonomo

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24