IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Chicago Alliance against Racist and Political Repression, Anti-War Coalition, Students for a Democratic Society at UIC and United States Palestinian Community Network, | |
| Plaintiffs, | Case No. 24-cv-02347 |
| v. | Judge Andrea R. Wood |
| City of Chicago, an Illinois Municipal Corporation, and Tom Carney, solely in his capacity as Commissioner of the Chicago Department of Transportation, | Magistrate Judge David Weisman |
| Defendants. | |

**PLAINTIFFS' REVISED MOTION FOR PRELIMINARY INJUNCTIVE RELIEF IN CONJUNCTION WITH THE FILING OF THEIR FIRST AMENDED COMPLAINT**

Plaintiffs Chicago Alliance Against Racist and Political Repression ("CAARPR"), the Anti-War Committee ("AWC"), Students for a Democratic Society at UIC ("SDS at UIC") and United States Palestinian Community Network ("USPCN"), through their counsel, request that this Court grant preliminary injunctive relief pending final judgment on the merits. In support of this motion, Plaintiffs state as follows and in their supporting Memorandum of Law:

1. From August 19, 2024 to August 22, 2024, the City of Chicago will be hosting the Democratic National Convention ("DNC"). Multiple decision makers as to U.S. foreign and domestic policy will be present, including the President and Vice President of the United States.

2. The Plaintiffs are four organizations organized to engage in peaceful political speech and who seek to exercise their First Amendment rights at the DNC to deliver their political messages directly to, *inter alia*, President Biden.

3. Initially, the City, working with the Democratic National Committee ("Dem. Nat'l. Comm."), exercised its authority under Section (g) of the Chicago Ordinance 10-8-330

("Ordinance") to deny the Plaintiff Organizations CAARPR, AWC and SDS at UIC's respective applications for parade permits within sight or sound of the Convention. Instead, the City unilaterally decided to offer an alternative parade route approximately three (3) to four (4) miles away from the DNC buried on a closed, tree lined street in Grant Park in an entirely other part of the City.

4. Late Thursday night, June 11, 2024, attorneys for the City of Chicago formally made an offer of an alternate route to these Plaintiff organizations which would allow the march to take place between Union Park and Park No. 578 on Chicago's westside, within sight and sound of the DNC ("Revised City Alternate Route"). *See* Defendants' Revised City Alternate Route attached as Exhibit A and visual representation attached as Exhibit B to Plaintiffs' First Amended Complaint, ECF No. 27.

5. However, in light of changing conditions in foreign and domestic affairs, the number of people expected to come to Chicago to participate in the respective marches has grown into the tens of thousands and, by some media estimates, up to 100,000.

6. The Revised City Alternate Route proposed by Defendants to resolve this lawsuit, while addressing one key element of a First Amendment analysis, impedes on the First Amendment rights Plaintiff Organizations and their respective members in two ways:

    a) The Revised City Alternate Route is only 1.4 miles long and, in light of the expected size of the marches, will likely result in the march doubling back on itself causing a standstill and denying many participants' right to march within sight and sound of the UC to deliver their political message to the attendees at this political event within the time the City has allotted for the march; and

    b) The Revised City Alternate Route requires marchers to turn off a major Boulevard in Chicago, W. Washington Blvd., between N. Hermitage Ave. and

Damen Ave., and to turn on to smaller side streets which will impede on the Plaintiff Organizations and their respective members' First Amendment rights in two ways: (1) the smaller side streets will not accommodate such large crowds and will create a safety concern for such a large collection of marchers; and (2) the turn onto the smaller side streets will result in log jams at those turns creating the potential for the crowd to spill over off the permitted route onto W. Washington Blvd. and potentially conflict with the Chicago Police Department.

7. On June 20, 2024, Plaintiff USPCN also filed a parade permit seeking a march route for the morning of August 19, 2024 within sight and sound of the DNC. *See* USPCN Parade Application attached to Plaintiff's First Amended Complaint (ECF No. 27) as Exhibit O.

8. In response, on June 28, 2024, the City, working with the Dem. Nat'l. Comm., exercised its authority under Section (g) of the Ordinance to deny Plaintiff Organization USPCN's application for a parade permit but providing the Revised City Alternate Route to USPCN as an alternate route.

9. USPCN rejected the Revised City Alternate Route for the same reasons set forth in paragraph 6 and appealed the decision.

10. On July 9, 2024, a hearing was held on USPCN's appeal of the denial of its parade permit request and on July 11, 2024, the administrative law judge issued a decision upholding the denial of USPCN's parade permit application. *See* Exh. O to First Amended Complaint.

11. As the U.S. Supreme Court made clear in *New York Times Co. v. Sullivan*, there is a "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." 376 U.S. 254, 270 (1964).

12. The Seventh Circuit weighs five factors when considering a motion for preliminary

injunction: (1) plaintiffs' reasonable likelihood of success on the merits, (2) whether a legal remedy is adequate, (3) whether the plaintiffs face irreparable harm, (4) whether the balance of the equities weigh in plaintiffs' favor, and (5) whether preliminary injunctive relief is in the public interest. *Turnell v. CentiMark Corp.,* 796 F.3d 656, 662 (7th Cir. 2015). All five factors weigh in favor of granting an injunction in this case.

13. Plaintiffs are likely to prevail on the merits as the Defendants have acknowledged that it will be the U.S. Secret Service which determines where the secure perimeter around the DNC will be, not the City, and that the City does not have final information as to where that secure perimeter will be thereby making Defendants' initial denial of the parade permit applications of the Plaintiff Organizations premature and the City's current refusal to allow the members of the Plaintiff Organizations to march on the wider W. Washington Blvd. between N. Hermitage and N. Damen Ave. and to march for more than 1.4 miles further outside of the expected secure perimeter.

14. Defendants failed or refused to wait until they had adequate information to construct a a less restrictive alternative parade route narrowly tailored to meet a compelling governmental interest.

15. Plaintiffs will have no adequate remedy at law. Plaintiffs do not seek any kind of monetary damages and such damages would be an inadequate remedy in exchange for the denial to engage in protected First Amendment speech.

16. Plaintiff will be irreparably harmed if they are not granted relief until after this matter is adjudicated to a final judgment. With the DNC approaching in just over five (5) weeks, the harm cannot be remedied after the fact, after the DNC has concluded and the opportunity to deliver political speech at that event has passed.

17. The balance of hardships weighs in favor of Plaintiffs. Plaintiffs seek limited and narrowly tailored relief to protect the First Amendment rights of their members from the denial of

parade permits during the DNC designed to peacefully deliver a political message to decision-makers in the government about pursuant to the. The Plaintiff Organizations seek protection of their First Amendment Rights from Defendants' unconstitutional application of Section (g) of the Ordinance to deny the requested permits without consideration of an alternative route that is narrowly tailored to serve a compelling government interest and seeks merely that the City wait until it has adequate information and then engage with Plaintiffs to attempt to work out more narrowly tailored restriction or, alternatively, for the Court to consider more narrowly tailored parade routes.

18. The public interest weighs in favor of granting preliminary injunctive relief. The U.S. Supreme Court has long recognized that the government does not have a free hand to regulate private speech on government property… that members of the public retain strong free speech rights when they venture into public streets and parks, 'which 'have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.'" *Pleasant Grove City v. Summum*, 555 U.S. 460, 469 (2009). Here the Defendants are attempting to regulate private political speech on public streets in contravention of this core principle of the U.S. Constitution.

19. Defendants do not agree to the entry of a preliminary injunction in this matter.

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Enjoin Defendants enforcing their decision to deny Plaintiffs' applications for permit parades, direct the Defendants to engage with Plaintiffs to consider less restrictive alternatives for a parade permit after receiving adequate information about the secure perimeter around the DNC or, alternatively, for the Court to direct the Defendants to allow Plaintiffs to conduct parade protests immediately outside the secure perimeter of the DNC; and

B. Grant such other relief the Court deems appropriate and just.

5

Dated: July 13, 2024

Respectfully submitted,

*/s/Christopher J. Williams*
Christopher J. Williams (ARDC #6284262)
Workers' Law Office, P.C.
1 N. LaSalle, Suite 1275
Chicago, Illinois 60602
(312) 945-8737

*Counsel for Plaintiffs*