IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Chicago Alliance against Racist and Political Repression, Anti-War Coalition, Students for a Democratic Society at UIC and United States Palestinian Community Network, | |
| Plaintiffs, | Case No. 24-cv-02347 |
| v. | Judge Andrea R. Wood |
| City of Chicago, an Illinois Municipal Corporation, and Tom Carney, solely in his capacity as Commissioner of the Chicago Department of Transportation, | Magistrate Judge David Weisman |
| Defendants. | |

**PLAINTIFF'S EMERGENCY MOTION FOR PRELIMINARY INJUNCTIVE RELIEF REGARDING CITY'S PARTIAL DENIAL OF PERMIT TO PLAINTIFF CAARPR FOR USE OF UNION PARK ON AUGUST 19, 2024 AND AUGUST 22, 2024 FOR POLITICAL SPEECHES PURSUANT TO PROPERLY FILED PERMIT APPLICATIONS**

Plaintiff Chicago Alliance Against Racist and Political Repression ("CAARPR"), through its counsel, requests that this Court grant preliminary injunctive relief pending final judgment on the merits regarding the granting of permits for use of, *inter alia*, a stage and sound amplification system so speakers can be heard at Union Park rallies in Chicago for August 19, 2024 pursuant to the terms of an application submitted by Plaintiff on November 9, 2023 (*over nine months ago*) and for August 22, 2024 pursuant to the terms of an application submitted by Plaintiff in January 8, 2024 (*over seven months ago*). In support of this motion, Plaintiff states as follows:

1. The Democratic National Convention ("DNC") will be held in Chicago beginning on August 18, 2024, *in less than one week*.

2. Plaintiffs CAARPR, Students for a Democratic Society at UIC ("SDS at UIC") and US Palestinian Community Network ("USPCN") have each sought a permit to march within sight and sound of the United Center ("UC") on August 18, 2024, including using Union Park as a

1

gathering spot and a location for speeches, with logistic support such as stages for speakers, a sound system, tents and canopies and portable toilets. *See* First Amended Complaint ("FAC"), ¶¶ 21, 39, 49 and Exhs. C, I and L, respectively.

3. On November 9, 2023, Plaintiff CAARPR submitted a fully completed application to the Chicago Park District ("CPD") pursuant to CPD's procedures for use of Union Park on August 19, 2024 from 12:00 p.m. to 4:30 p.m. with access for vendors beginning at 8:00 a.m. and specifying that CAARPR required stages for speakers, a sound system, tents and canopies and portable toilets during the time of the event. *See* CAARPR Chicago Park District Permit Application for Union Park for August 19, 2024 attached hereto as Exh. A.

4. Similarly, CAARPR and the Anti-War Committee ("AWC") each sought a permit to march within sight and sound of the UC on August 22, 2024, including using Union Park as a gathering spot and a location for speeches, with logistic support such as stages for speakers, a sound system, tents and canopies and portable toilets. *See* FAC, ¶ 32 and Exh. F.

5. On January 8, 2024, Plaintiff CAARPR submitted a fully completed application to CPD pursuant to CPD's procedures for use of Union Park on August 19, 2024 from 12:00 p.m. to 4:30 p.m. with access for vendors beginning at 8:00 a.m. and specifying that CAARPR required stages for speakers, a sound system, tents and canopies and portable toilets during the time of the event. *See* CAARPR Chicago Park District Permit Application for Union Park for August 22, 2024 attached hereto as Exh. B.

**WAIVER OF RIGHT TO DENY UNION PARK PERMIT TO CAARPR BY CPD**

6. In the nine and seven months since CAARPR submitted its respective Union Park permit applications, CPD never denied CAARPR's requested permits for use of Union Park, with stages for speakers, a sound system, tents and canopies and portable toilets. As a result of the failure of CPD responding to or affirmatively denying CAARPR's Union Park permits, CPD

waived any objection to CAARPR's Union Park permits on the terms of the submitted application.

7. A CPD park permit applicant can only appeal a denial of an application pursuant to CPD Code, Ch. 7 ("CPD Code"). *See* CPD Code, Ch. 7 attached to hereto as Exh. C.

8. CPD's failure to ever deny CAARPR's applications, thereby allowing an appeal, but now at the last moment denying CAARPR's applications violates Plaintiff CAARPR's Due Process Clause rights under the Fifth and Fourteenth Amendment.

**ALTERNATIVELY, UNION PARK PERMIT APPLICATION APPROVED BY CDOT**

9. On June 14, 2024, in response to an email from a representative of CAARPR, Jacquelyn Braun of CPD responded that a park permit was not required from CPD but rather from the Chicago Department of Transportation ("CDOT"). Ms. Braun identified Assistant Commissioner Bryan Gallardo as the individual from CDOT who had the responsibility for responding, the same individual responsible for denying the parade permits at issue in this case.

10. The granting of CAARPR's requests for permits for use of Union Park, including stage for speakers, a sound system and other amenities such as porta-potties thus fell under CDOT's authority under the Parade Ordinance. Chicago Ordinance ("Ordinance") 10-8-330, a copy of which is attached hereto as Exh. D.

11. The Ordinance provides in pertinent part:

> (j)(1) The commissioner shall take action upon the application for a parade permit, and provide notice thereof, for applications filed in January within 10 business days after filing of an application…
>
> (j)(3) In the event that the commissioner fails to take action within the time prescribed in subsection (j)(1) after the date upon which the application was filed, the application shall be deemed approved…

10-3-330(j)(1 & 3).

12. Thus, if the Court finds that CPD did not waive its authority to deny CAARPR's Union Park applications by processing the applications, accepting the filing fees yet failing to

3

respond at all, in the alternative, CDOT's failure to respond within 10 business days after receiving jurisdiction over the applications resulted in the automatic approval of the application by operation of law.

## UNCONSTITUTIONAL DENIAL OF UNION PARK PERMIT APPLICATIONS

13. On August 14, 2024, *over nine and seven months* after CAARPR submitted permit applications for use of Union Park for speeches on August 19, 2024 and August 22, 2024 respectively, the City, through Byan Gallardo of CDOT, issued a letter to CAARPR allowing use of Union Park as an area only for assembling and disbanding the Plaintiff Organizations' various marches but denying the use of "stages or platforms, portable restrooms or toilets, tents or canopies, or sound equipment." *See* August 14, 2024 letter from Bryan Gallardo, attached hereto as Exh. E.

### *VIOLATION OF PLAINTIFF'S CONSTITUTIONAL DUE PROCESS RIGHTS*

14. Procedural due process imposes constraints on governmental decisions which deprive individuals of "liberty" or "property" interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).

15. Liberty interests under the Due Process Clause of the Fifth or Fourteenth Amendment extend to the exercise of First Amendment rights. *Bd. of Regents v. Roth, 408 U.S. 564, 572 (1972).*

16. CAARPR sought the two permits for use of Union Park, public property, prior to marches on August 19, 2024 and August 22, 2024 over nine and seven months ago respectively.

17. CAARPR rightfully assumed that the fact that CPD accepted its permit applications and application fee and never denied any part of its Union Park permit applications over the course of nine months meant their permit applications had been approved as submitted.

18. On June 14, 2024, CAARPR was advised by CPD that jurisdiction for park permits

at Union Park had been transferred from CPD to CDOT.

19. However, despite a governing ordinance that requires CDOT to respond to permit applications within 10 business days, CDOT gave no response to CAARPR and specifically did not deny any aspect of CAARPR's Union Park applications.

20. At a hearing in this matter on August 13, 2024, attorneys for the City advised the Court that they had created a process that was *sui generis*, which means "of its own kind" but here, for all practical purposes, means made up at the last minute without any meaningful opportunity to appeal.

21. At 3:00 p.m. on August 14, 2024, just five days before the start of the DNC and the first date CAARPR sought to use stages in Union Park to engage in political speech, counsel for the City provided Plaintiffs' counsel with the letter from Assistant Commissioner of CDOT, Bryan Gallardo. *See* Exh. E.

22. The City had indeed made up its own process at the last minute and, importantly, a process which provides no opportunity for Plaintiffs to be heard through an appeal.

23. CAARPR has a liberty interest in using Union Park for free speech expression.

### ***VIOLATION OF PLAINTIFF'S FIRST AMENDMENT RIGHTS***

24. Plaintiffs' intended protest speeches in Union Park near the United Center, site of the DNC, clearly constitute expressive conduct and speech protected by the First Amendment. *See Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.,* 515 U.S. 557, 568 (1995) (explaining that "protest marches" qualify for First Amendment protection due to "the inherent expressiveness of marching to make a point").

25. However, "even in a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech." *Navratil v. City of Racine,* 101 F.4th 511, 519 (7th Cir. 2024) (quoting *Ward v. Rock Against Racism,* 491 U.S. 781, 791 (1989)).

26. The "[g]overnment may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals." *Ward,* 491 U.S. at 799; *see also Bl(a)ck Tea Soc'y v. City of Boston,* 378 F.3d 8, 13 (1st Cir. 2004) (reasoning that "[s]ecurity is not a talisman that the government may invoke to justify *any* burden on speech").

27. Plaintiff CAARPR sought permits for use of Union Park for August 19, 2024 and August 22, 2024 over nine and seven months ago because the ability to have space in a public park, with stages and a sound system to elevate speakers and amplify their voices so their political speech can be heard by a gathered crowd is so critical that they will not be able to exercise their First Amendment rights without them.

28. CAARPR relied on the fact that CPD accepted their Union Park permit applications and did not deny them in any respect.

29. CAARPR further relied on the fact that, despite being told by CPD a full seven months after the initial application that jurisdiction over Union Park permits was being transferred to CDOT, CDOT never denied their applications in any respect.

30. The City's efforts to deny at this late date the Plaintiff's request for, *inter alia*, a stage and sound amplification system so speeches can be heard unreasonably burdens Plaintiff's First Amendment rights without the City creating a record that such restrictions serve a compelling governmental interest.

**DENIAL IS CLEARLY INTENDED TO LIMIT DNC'S EXPOSURE TO PROTESTS**

31. Further, the First Amendment prohibits the Government from restricting or burdening "expression because of its message, its ideas, its subject matter, or its content." *Ashcroft* v. *American Civil Liberties Union*, 535 U. S. 564, 573, 122 S. Ct. 1700, 152 L. Ed. 2d 771 (2002).

32. "As a general matter," a content-based regulation is "'presumptively

6

unconstitutional and may be justified only if the government proves that [it is] narrowly tailored to serve compelling state interests.'" *National Institute of Family and Life Advocates*, 585 U. S., at 766, 138 S. Ct. 2361, 201 L. Ed. 2d 835 (2018).

33. The record has made clear that both Illinois and Chicago officials have fought hard for the right to host the 2024 DNC and that the DNC has substantial influence over decisions about many factors about the upcoming DNC, including protest routes and opportunities for speeches.

34. The DNC has an interest in minimizing the exposure of Democratic officials to protests, particularly around the issues Plaintiffs seeking to protest.

35. The reason the City is denying CAARPR the opportunity to use stages and a sound system is because, at the behest of the DNC, they do not want the speeches heard.

36. Similarly, Defendants created this made up process at the last minute without any opportunity for appeal or any right to be heard to ensure the Plaintiff Organization's speeches could not be heard.

**<u>STANDARD FOR PRELIMINARY INJUNCTION</u>**

37. A "preliminary injunction is an extraordinary remedy never awarded as of right." *Bevis v. City of Naperville,* 85 F.4th 1175, 1188 (7th Cir. 2023) (quoting *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008)), *cert. denied sub nom. Harrel v. Raoul,* 144 S. Ct. 2491 (2024). Plaintiffs, as the moving parties, bear the burden of justifying their requested injunction. *Id.* A movant "must show that (1) he has some likelihood of success on the merits of his claim; (2) traditional legal remedies are inadequate; and (3) he would suffer irreparable harm without preliminary injunctive relief." *Finch v. Treto,* 82 F.4th 572, 578 (7th Cir. 2023).

38. Upon a showing of those "threshold requirements," the court considering preliminary injunctive relief "must balance the equities, weighing the harm to the moving party if the requested injunction is denied against the harm to the nonmoving party and the public—

including third parties—if it is granted." *Id.; see also Grubhub Inc. v. Relish Labs LLC,* 80 F.4th 835, 844 (7th Cir. 2023) ("[T]he greater the movant's likelihood of success on the merits, the less the harms need be in its favor."), *cert. denied,* No. 23-757, 2024 WL 2883756 (U.S. June 10, 2024).

39. In the First Amendment context, "the likelihood of success on the merits will often be the determinative factor." *Higher Soc'y of Ind. v. Tippecanoe County,* 858 F.3d 1113, 1116 (7th Cir. 2017) (internal quotation marks omitted). That is because a violation of the First Amendment "unquestionably constitutes irreparable injury, and injunctions protecting First Amendment freedoms are always in the public interest." *Wis. Right to Life, Inc. v. Barland,* 751 F.3d 804, 830 (7th Cir. 2014) (internal quotation marks omitted). The crucial likelihood-of-success factor requires "a 'strong' showing that reveals how [the movant] proposes to prove its case"; a "mere possibility" of success does not suffice. *Bevis,* 85 F.4th at 1188.

40. That said, the government actor "bears the burden of proving the constitutionality" of restrictions on speech, including at the preliminary-injunction stage. *Barland,* 751 F.3d at 830 (quoting *McCutcheon v. FEC,* 572 U.S. 185, 210 (2014)).

41. Plaintiffs have a strong likelihood of succeeding on the merits and Defendants have not made any adequate showing through competent evidence that their restrictions on Plaintiff's use of Union Park is constitutional.

42. There can be no doubt that Plaintiff's use of Union Park, a public space, to conduct speeches related to current national and international political events close to the United Center, site of the 2024 DNC constitutes expressive conduct and speech protected by the First Amendment.

43. Given the anticipated size of the crowd, stages and a sound system to elevate speakers and amplify their voices so their political speech can be heard by a gathered crowd is so critical that they will not be able to exercise their First Amendment rights without them.

44. In its August 14, 2024, the City makes vague references to safety concerns about

8

setting up a stage and a sound system and allowing portable toilets but provides no detail as to why. Further, the City claims that Plaintiff's use of a stage in Union Park from 12:00 pm – 2:00 pm will infringe on other's rights to use the space but do not identify other groups who have sought to use space in the park or identify how the space will be too limited.

45. Further, upon receipt of the letter from counsel for the City at 3 pm on August 14, 2024, counsel for Plaintiffs requested a teleconference with counsel for the City to see if some accommodation could be made to resolve this dispute prior to seeking action from the Court.[1] Defendants did not respond.

WHEREFORE, Plaintiffs respectfully request that this Court enjoin the City from denying Plaintiffs use of Union Park on August 19, 2024 and August 22, 2024 on the terms included in CAARPR's permit applications, including the use of stages and a sound system for speakers and other amenities such as portable toilets and grant such other relief the Court deems appropriate and just.

Dated: August 14, 2024

Respectfully submitted,

*/s/Christopher J. Williams*
Christopher J. Williams (ARDC #6284262)
Workers' Law Office, P.C.
1 N. LaSalle, Suite 1275
Chicago, Illinois 60602
(312) 945-8737

*Counsel for Plaintiffs*

---

[1] Given the late timing of the letter from the City, Plaintiffs' counsel could give Defendants' counsel only until 8 p.m. on August 14, 2024 to respond before having to file this emergency motion.