**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Chicago Alliance against Racist and Political Repression, Anti-War Coalition, Students for a Democratic Society at UIC and United States Palestinian Community Network, | |
| Plaintiffs, | Case No. 24-cv-02347 |
| v. | Judge Andrea R. Wood |
| City of Chicago, an Illinois Municipal Corporation, and Tom Carney, solely in his capacity as Commissioner of the Chicago Department of Transportation, | Magistrate Judge David Weisman |
| Defendants. | |

**SECOND AMENDED COMPLAINT**

Plaintiffs Chicago Alliance Against Racist and Political Repression ("CAARPR"), the Anti-War Committee ("AWC"), Students for a Democratic Society at UIC ("SDS at UIC") and the United States Palestinian Community Network ("USPCN"), for their Complaint against the City of Chicago, an Illinois municipal corporation (hereafter "Chicago"), and Tom Carney, solely in his capacity as Commissioner of the Chicago Department of Transportation (hereafter "CDOT Commissioner") (collectively "Defendants"), state as follows:

**I.      PRELIMINARY STATEMENT**

1.      In January of 2024, the Plaintiff organizations CAARPR, AWC and SDS at UIC timely filed parade permits to hold protest marches within sight and sound of the Chicago United Center, the site of the 2024 Democratic National Convention ("DNC"). At the time, the state of Israel's attack on the people of Palestine had recently begun with the use of U.S.-made and funded weapons and had resulted in the killing of over ten thousand Palestinians. The Plaintiff organizations expected thousands to participate in the marches at the DNC.

2.      Since that time, the number of Palestinian civilians killed with bombs and

missiles made in and funded by the United States has swelled to almost 50,000, 30% of which are estimated to be women and 40% of which are estimated to be children. In addition, more than 2 million of the 2.3 million Gazans have been displaced and more than a million Gazans – mostly children – face catastrophic conditions and are literally starving to death due to Israeli military action supported by and funded by the United States. The genocide against the Palestinian people has only grown. In seeking parade permits in January, these Plaintiffs have sought to direct their political speech through organized, peaceful marches designed to allow all of the participants to express their political messages on public streets directed at public officials.

3.      In response, the Defendants rejected these Plaintiff Organizations' parade permit applications and offered them as an alternate route on which to march a less than one mile, blocked off, tree-lined strip of Columbus Drive, three to four miles east of the United Center and required Plaintiffs to take-it-or-leave-it, asserting that if they did not take it, they would lose their right to a permit for their respective marches. On June 20, 2024, the fourth Plaintiff Organization, USPCN, filed an application for a parade permit which was also rejected.

4.      On March 22, 2024, the original Plaintiff Organizations filed this lawsuit asserting that, *inter alia*, the Defendants' denial of the parade permits violated and proposed alternate route not within sight and sound of the site of the DNC violated their First Amendment Rights. In the course of this litigation and to resolve a pending motion for a preliminary injunction, in July 2024, the Defendants offered, for settlement purposes only, a new alternate route within sight and sound of the United Center, the site of the DNC (Revised City Alternate Route").[1]

5.      While Defendants' settlement proposal of the Revised City Alternate Route

---

[1] *See* July 11, 2024 email from counsel for Defendants to counsel for Plaintiffs formally offering the revised alternate route, attached hereto as Exhibit A. *See also* Google Map rendition of Defendants revised alternate route attached as Exhibit B. The City's revised alternate route was also offered as an alternate route along with the denial of the parade permit sought by USPCN.

resolved some of the issues raised in the original Complaint, Defendants never abandoned their position that the Ordinance allows the Defendants to unilaterally deny a parade permit and offer an alternative on a take-or-leave-it basis, without acquiring sufficient information about legitimate limitations on Plaintiffs' and the public's free speech rights due to a compelling government interest as required to justify a narrowly tailored alternative route. Defendants failed to even engage with the Plaintiff applicants as new information became available to determine if other alternative routes could satisfy both Plaintiffs' First Amendment Rights and any compelling governmental interest. In the appeal of the denial, the hearing officer in the City of Chicago Department of Administrative Hearing refused to allow the question of the limits of the Defendants' authority to denying a permit to be heard.

6. Despite the passage of the 2024 DNC, application of and interpretation of the Ordinance will and does continue to have a very real impact on the Plaintiff organizations' constitutional rights.

## II. NATURE OF THE CASE

7. This lawsuit arises under Section 1983 of the Civil Rights Act of 1871 ("Section 1983") for violation of the First Amendment rights of Plaintiffs, all organizations seeking to conduct peaceful political protest marches in Chicago, including during the Democratic National Convention ("DNC") held in Chicago from August 19, 2024 to August 22, 2024 relating to U.S. foreign and domestic affairs and directed at federal elected officials, including the President and Congress people, who attended the DNC. Plaintiffs allege that the Chicago Ordinance 10-8-330 ("Ordinance") which regulates issuance of permits for parades such as those sought by Plaintiffs is: (1) unconstitutional on its face and/or as applied because it permits Defendants to deny a permit solely based on an overly broad definition of "duplicative" in Section (d)(1) of the Ordinance without consideration of a narrowly tailored restriction to meet a compelling governmental interest; (2) unconstitutional as applied to Plaintiffs and their permit applications because in

3

denying the permit applications pursuant to Section (g) of the Ordinance, Chicago failed to consider an alternate route narrowly tailored restriction to meet a compelling governmental interest which has a similar route and location as required by Section (k) of the Ordinance and the First Amendment; and (3) unconstitutional as applied because Defendants denied the parade applications and offered a single alternate route on a take-it-or-leave basis before they had sufficient information to craft an alternate route with restrictions narrowly tailored to meet a compelling governmental interest. In the course of this litigation, the City has not altered in any way its interpretation or application of the Ordinance.

### III.     JURISDICTION AND VENUE

8.      This matter arises under the U.S. Constitution and laws of the United States, specifically the First Amendment and 42 U.S.C. § 1983.

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331.

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 as a substantial number of the facts and events giving rise Plaintiffs' claims occurred in this judicial district and as Defendants are a governmental body and public official respectively within this jurisdiction.

### IV.     PARTIES

A.     **Plaintiffs**

11.     Plaintiff Chicago Alliance Against Racist and Political Repression ("CAARPR"):

    a.     is an organization of housed in Chicago, Illinois, within this judicial district and run in part by co-chair Kobi Guillory, who resides within this judicial district and is made up of members who are citizens and residents of the United States;

    b.     is an organization formed to free survivors of police torture, wrongful conviction, and political imprisonment, as well as building legislative and organizational structures for community control of the police and for which protest against racism and political repression is core to its existence; and

    c.    has organized and engaged in numerous protests in the Chicago area in the past and will continue to do so. For example, CAARPR mobilized 3,000 people in August 2015 in response to the murder of Laquan McDonald, held a 20,000 person rally in May 2020 after the murder of George Floyd, and organized City Hall rallies from summer 2020 until the passage of the Empowering Communities for Public Safety (ECPS) ordinance in 2021. CAARPR will continue to fight racism and political repression through organized protests, including conducting parades (i.e. protest marches) in Chicago.

12.    Plaintiff Anti-War Committee ("AWC")

    a.    is an organization of housed in Chicago, Illinois, within this judicial district and run, in part by co-chair Yevgeniya, who resides within this judicial district and is made up of members who are citizens and residents of the United States;

    b.    was originally formed in 2012 to march against NATO and more recently has organized to protest the ongoing genocidal siege on Gaza; support a free Palestine; and object to US military and economic aid to the Israeli regime and for which protest against imperialist wars is core to our existence; and

    c.    has organized and engaged in numerous protests in the Chicago area in the past and will continue to do so. For example, AWC members have participated in every protest since the start of Israel's assault on Gaza, was a core organization in the Coalition to March on the DNC, has organized protests in Chicago against US military aid to the dictatorship in the Philippines, took part in the campus protests in Chicago demanding colleges and universities divest from Israel as well and will continue to fight U.S imperialist wars through organized protests, including conducting parades (i.e. protest marches) in Chicago.

13.    Plaintiff Students for a Democratic Society at the University of Illinois ("SDS at UIC"):

    a.    is an organization of housed in Chicago, Illinois, within this judicial district and run, in part by SDS at UIC President Henry Rathburn a/k/a Liz Rathburn, who resides within this judicial district, and is made up of members who are citizens and residents of the United States;

    b.    is an organization formed to oppose U.S. intervention abroad and racism and economic injustice within the United States and for which protesting against the US funded genocide in Gaza and US intervention in the Middle East is core to our existence; and

    a.    has organized and engaged in numerous protests in the Chicago area in the past and will continue to do so. For example, SDS at UIC organized a

walkout and march of hundreds students in solidarity with Palestine and Yemen in January 2024 and will continue to fight against war, racism and corporate greed through organized protests, including conducting parades (i.e. protest marches) in Chicago.

14.     Plaintiff United States Palestinian Community Network ("USPCN"):

    a.    is an organization of housed in Chicago, Illinois, within this judicial district and run by National Chair, Hatem Abudayyeh, who resides within this judicial district and is made up of members who are citizens and residents of the United States;

    b.    is an organization formed to provide education, advocacy and community organizing to end the Israeli occupation and colonization of Palestine, and in support of the Palestinian national, civil and human rights and for which. Protest against racism, apartheid and zionist occupation and colonization is central to our organization's mission and purpose; and

    c.    has organized and engaged in numerous protests in the Chicago area in the past and will continue to do so. For example, USPCN was in the leadership of both the NATO protests in 2012, the DNC protest in August 2024, the weekly protests since October 2023 of the U.S.-funded Israeli genocide against the Palestinian people as well as immigrant rights mega-marches in Chicago in 2006 and beyond and will continue to fight for Palestinian liberation and immigrant rights through organized protests, including conducting parades (i.e. protest marches) in Chicago.

**B.     Defendants**

15.     Defendant the City of Chicago ("Chicago") is a lawfully constituted municipality under the laws of the State of Illinois, within this judicial district.

16.     Defendant Tom Carney is the Commissioner of the Chicago Department of Transportation being sued only in his official capacity for acts and omissions committed in this judicial district.

## V.     FACTUAL BACKGROUND

17.     The Democratic National Committee ("Dem. Nat'l Comm.") held the 2024 convention to nominate its Democratic candidate for President and Vice President of the United States, federal elected offices in Chicago from August 19, 2024 to August 22, 2024.

18.     Chicago successfully lobbied the Dem Nat'l Comm. heavily to hold the 2024

Democratic National Convention ("DNC") in Chicago.

19.     The DNC was held at the United Center ("UC") located at 1901 W. Madison Street in Chicago, Illinois, at least three (3) miles west of the city center.

20.     As the city hosting the 2024 DNC, Chicago had the obligation to protect not only the safety and security of the delegates, politicians and other attending the DNC and the residents of the City of Chicago, but also to secure the First Amendment rights of citizens and residents of the City of Chicago and the United States to engage in political speech and to peacefully assemble in public venues with the restrictions narrowly tailored to meet a compelling City of Chicago interest.

21.     Plaintiffs, all organizations with membership made up of citizens and residents of the City of Chicago and the United States, applied for parade permits under the Ordinance to conduct peaceful marches with a political message directed at the federal officials in attendance at the DNC being held at the UC.

22.     On January 10, 2024, Plaintiff CAARPR, through Kobi Guillory, applied for a parade permit pursuant to the Ordinance for a march proposed to be conducted in the area of the UC entitled March on the DNC 2024 **to be held on August 19, 2024**. *See* CAARPR parade permit application attached hereto as Exhibit C.

23.     On January 22, 2024, the CDOT Commissioner, through his designee, Bryan Gallardo, denied the January 10, 2024 CAARPR parade permit application for the March on the DNC 2024 to be held on August 19, 2024 based on Section (g) of the Ordinance, which permits the CDOT Commissioner to deny a permit application if:

> *(1) the proposed parade will substantially or unnecessarily interfere with traffic in the area contiguous to the activity, or that, if the parade will substantially interfere with such traffic, that there are available at the time of the proposed parade sufficient city resources to mitigate the disruption; or (2) there are not available at the time of the parade a sufficient number of on-duty police officers, or other city*

7

*employees authorized to regulate traffic, to police and protect lawful participants in the parade and non-participants from traffic-related hazards in light of the other demands for police protection at the time of the proposed parade.*

Ordinance 10-8-330(g).

24.     In the January 22, 2024 denial letter, the CDOT Commissioner offered an alternate route for the parade which could be conducted on Columbus Ave between East Roosevelt Road and East Jackson Blvd, in downtown Chicago (hereafter "City Alternate Route"). *See* January 22, 2024 Denial Letter, attached as Exhibit D; *see also* Exhibit E (the City Original Alternate Route).

25.     Defendants' original alternate route is between three (3) and four (4) miles east of the UC, the site of the DNC.

26.     Defendants offered the alternate route on a take-it-or-leave-it basis or, in other words, required Plaintiff CAARPR to accept the alternate route or forever lose its right to a parade permit.

27.     Section (k) requires the City of Chicago, in pertinent part:

*When the commissioner denies an application for a parade permit, the commissioner shall authorize the conduct of a parade on a date, at a time, at a location, or over a route different from that named by the applicant. This alternate permit shall, to the extent practicable, authorize an event that will **have comparable public visibility and a similar route**, **location** and date to that of the proposed parade.*

Ordinance 10-8-330(k)(*emphasis added*)

28.     Prior to the filing of this lawsuit, Defendants made no effort to communicate with Plaintiff CAARPR to discuss an alternate route with comparable visibility and a similar route and location to the extent possible, instead only making the offer of the alternate route on a take-it-or-leave-it basis.

29.     Prior to the filing of this lawsuit, Defendants made no effort to consider alternate routes that would be more narrowly tailored restrictions on the proposed route in terms of time,

manner and place.

30.     Only as a result of Plaintiff CAARPR's participation in this lawsuit and, for settlement purposes only, on July 11, 2024, Defendants offered Plaintiff CAARPR the Revised City Alternate Route for a parade to be held on August 19, 2024. *See* Defendants' Revised City Alternate Route attached as Exhibit A and visual representation attached as Exhibit B.

31.     However, throughout this litigation, Defendants have never abandoned their position that the Ordinance allowed the Defendants to unilaterally deny CAARPR a parade permit and offer an alternative on a take-or-leave-it basis, without considering newly available information or even engaging with the applicant to determine an alternative route sufficiently narrowly tailored to meet the government's compelling interest.

32.     On January 7, 2024, Plaintiff CAARPR applied for a parade permit pursuant to the Ordinance for a march proposed to be conducted in the area of the UC entitled March on the DNC 2024 ***to be held on August 22, 2024***. *See* CAARPR January 7, 2024 parade permit application attached hereto as Exhibit F.

33.     On February 1, 2024, the CDOT Commissioner, through his designee, Bryan Gallardo, denied the January 7, 2024 CAARPR parade permit application for the March on the DNC 2024 to be held on August 22, 2024 based on the application the January 30, 2024 application being duplicative of the January 10, 2024 application filed by CAARPR. *See* February 1, 2024 CDOT Commissioner Denial Letter, attached hereto as Exhibit G.

34.     In support of the February 1, 2024 Denial Letter, the CDOT Commissioner relied exclusively on Section (d) of the Ordinance which states in pertinent part:

> *No person or organization may submit more than one application* for the same parade date and route, or for a parade substantially similar in theme or units described *but requesting an alternate date or route*, whether using the same name, different names, or different affiliations *that the person or organization may control <u>or be a member of</u>*.

Ordinance 10-8-330(d)(1)(*emphasis added*)

35.     CAARPR appealed the denial of the January 30, 2024 parade permit application to the Chicago Department of Administrative Hearings and the permit denial was upheld. *See* Hearing Officer Decision in 23 PA 000003, attached hereto as Exhibit H.

36.     Only as a result of Plaintiff CAARPR's participation in this lawsuit and for settlement purposes only, on July 11, 2024, Defendants offered Plaintiff CAARPR the Revised City Alternate Route for a parade to be held on August 22, 2024. *See* Defendants' Revised City Alternate Route attached as Exhibit A and visual representation attached as Exhibit B.

37.     However, throughout this litigation, Defendants have never abandoned their position that the Ordinance allowed the Defendants to unilaterally deny CAARPR a parade permit and offer an alternative on a take-or-leave-it basis, without considering newly available information or even engaging with the applicant to determine an alternative route sufficiently narrowly tailored to meet the government's compelling interest.

38.     On February 29, 2024, Plaintiff AWC, through then co-chair John Metz, applied for a parade permit pursuant to the Ordinance for a march proposed to be conducted in the area of the UC entitled March for the People's Agenda Parade to be held on August 22, 2024. *See* AWC February 29, 2024 parade permit application attached hereto as Exhibit I.

39.     On March 7, 2024, the CDOT Commissioner, through his designee, Bryan Gallardo, denied the February 29, 2024 AWC parade permit application for the March for the People's Agenda Parade to be held on August 22, 2024 based on Section (g) of the Ordinance. *See* ¶26, *supra*; *see also* March 7, 2024 CDOT Commissioner Denial Letter, attached as Exhibit J.

40.     In the March 7, 2024 denial letter, the CDOT Commissioner offered the same City Alternate Route. *See* Exh. J.; *see also* Exh. E.

41.     The original City Alternate Route is more than three (3) miles east of the UC, the

sight of the DNC, at its closest point and that section of Columbus Drive is a tree-lined street which is largely not visible from either Lake Shore Drive to the east or Michigan Avenue to the west.

42.     Prior to the filing of this lawsuit, Defendants made no effort to communicate with Plaintiff AWC to discuss an alternate route with comparable visibility and a similar route and location to the extent possible as required by Section (k) of the Ordinance (*see* ¶20, *supra*), instead making the offer of the alternate route on a take-it-or-leave-it basis.

43.     Prior to the filing of this lawsuit, Defendants made no effort to consider alternate routes that would be more narrowly tailored restrictions on the proposed route in terms of time, manner and place.

44.     AWC appealed the denial of the February 29, 2024 parade permit application to the Chicago Department of Administrative Hearings and the permit denial was upheld. *See* Hearing Officer Decision in 23 PA 000004, attached hereto as Exhibit K.

45.     Only as a result of Plaintiff AWC's participation in this lawsuit and for settlement purposes only, on July 11, 2024, Defendants offered Plaintiff AWC the Revised City Alternate Route. *See* Exhibits A and B.

46.     However, throughout this litigation, Defendants have never abandoned their position that the Ordinance allowed the Defendants to unilaterally deny AWC a parade permit and offer an alternative on a take-or-leave-it basis, without considering newly available information or even engaging with the applicant to determine an alternative route sufficiently narrowly tailored to meet the government's compelling interest.

47.     On February 29, 2024, Plaintiff SDS at UIC, through Liz Rathburn, applied for a parade permit pursuant to the Ordinance for a march proposed to be conducted in the area of the UC entitled March against US Funded Gaza Genocide to be held on August 19, 2024. *See* SDS at UIC February 29, 2024 parade permit application attached hereto as Exhibit L.

48.     On March 7, 2024, the CDOT Commissioner, through his designee, Bryan Gallardo, denied the February 29, 2024 SDS at UIC parade permit application for the March against US Funded Gaza Genocide to be held on August 19, 2024 based on Section (g) of the Ordinance. *See* ¶26, *supra*; *see also* March 7, 2024 CDOT Commissioner Denial Letter, attached as Group Exhibit M.

49.     In the March 7, 2024 denial letter, the CDOT Commissioner offered the same City Alternate Route. *See* Exh. M; *see also* Exh. E.

50.     The City Alternate Route was originally more than three (3) miles east of the UC, the sight of the DNC, at its closest point and that section of Columbus Drive is a tree-lined street which is largely not visible from either Lake Shore Drive to the east or Michigan Avenue to the west.

51.     Prior to the filing of this lawsuit, Defendants made no effort to communicate with Plaintiff SDS at UIC to discuss an alternate route with comparable visibility and a similar route and location to the extent possible as required by Section (k) of the Ordinance (*see* ¶20, *supra*), instead making the offer of the alternate route on a take-it-or-leave-it basis.

52.     Prior to the filing of this lawsuit, Defendants made no effort to consider alternate routes that would be more narrowly tailored restrictions on the proposed route in terms of time, manner and place.

53.     SDS at UIC appealed the denial of the February 29, 2024 parade permit application to the Chicago Department of Administrative Hearings and the permit denial was upheld. *See* Hearing Officer Decision in 23 PA 000005, Group Exhibit M.

54.     Only as a result of Plaintiff SDS at UIC's participation in this lawsuit and for settlement purposes only, on July 11, 2024, Defendants offered Plaintiff SDS at UIC the Revised City Alternate Route for a parade to be held on August 19, 2024. *See* Exhibits A and B.

55. However, throughout this litigation, Defendants have never abandoned their position that the Ordinance allowed the Defendants to unilaterally deny AWC a parade permit and offer an alternative on a take-or-leave-it basis, without considering newly available information or even engaging with the applicant to determine an alternative route sufficiently narrowly tailored to meet the government's compelling interest.

56. Chicago, through the CDOT Commissioner, originally further denied the application for a permit to march in front of the DNC filed by Plaintiffs CAARPR, AWC and SDS at UIC based on a recommendation from the Chicago Police Department ("CPD") based on unspecified security concerns immediately around the United Center DNC. At the Administrative Hearings, CPD offered no specific justification for its recommendation and had not considered more narrowly tailored restrictions.

57. On June 20, 2024, Plaintiff USPCN, through Hatem Abudayyeh, applied for a parade permit pursuant to the Ordinance for a march proposed to be conducted in the area of the UC entitled March against Genocide in Gaza to be held on August 19, 2024. *See* USPCN's June 20, 2024 parade permit application attached hereto as Group Exhibit N.

58. On June 28, 2024, the CDOT Commissioner, through his designee, Bryan Gallardo, denied the June 20, 2024 USPCN parade permit application for the March against Genocide in Gaza to be held on August 19, 2024 based on Section (g) of the Ordinance. *See* ¶26, *supra*; *see also* June 28, 2024 CDOT Commissioner Denial Letter, Exhibit N.

59. In the June 28, 2024 denial letter, the CDOT Commissioner offered the Defendants' Revised City Alternate Route. *See* Exh. N; *see also* Exhs. A and B.

60. Defendants originally made no effort to communicate with Plaintiff USPCN to discuss an alternate route with a similar route and location to the extent possible as required by Section (k) of the Ordinance (*see* ¶20, *supra*), instead making the offer of the alternate route on a

13

take-it-or-leave-it basis.

61.     USPCN appealed the denial of the June 20, 2024 parade permit application to the Chicago Department of Administrative Hearings and the permit denial was upheld. *See* Hearing Officer Decision in 23 PA 000006, attached hereto as Exhibit O).

62.     Only as a result of Plaintiff USPCN's participation in this lawsuit, on July 11, 2024, Defendants offered Plaintiff USPCN the Revised City Alternate Route. *See* Exhibits A and B.

63.     However, throughout this litigation, Defendants have never abandoned their position that the Ordinance allowed the Defendants to unilaterally deny USPCN a parade permit and offer an alternative on a take-or-leave-it basis, without considering newly available information or even engaging with the applicant to determine an alternative route sufficiently narrowly tailored to meet the government's compelling interest.

64.     The DNC is an inherently political event.

65.     Numerous elected federal officials and candidates for federal office from across the United States, including President Biden, Vice President Harris and senators and congressional representatives, will be in attendance at the DNC and, specifically, conducted their nominating activities at the UC during the week of the DNC.

66.     The parade permits Plaintiffs sought to conduct peaceful marches on public forums to convey a different political message to different attendees attending on different dates at the DNC being held at the UC.

67.     Each Plaintiff organization agreed it would engage with Defendants to find a more narrowly tailored parade route in terms of location and route.

68.     As a major city, Chicago regularly host political events which are the subject of protests organized by Plaintiffs and other members of the public. In addition to the 2024 DNC,

Chicago has hosted multiple other DNCs, has hosted NATO Summits, political debates among numerous other political events.

## COUNT I
### Violation of the First Amendment
### *Denial of Parade Permits*
### *Solely Based on Section (d)(1) of the Ordinance*

Plaintiffs hereby incorporate and re-allege paragraphs 1 through 69 as though set forth herein.

69. The First Amendment of the U.S. Constitution protects the right of U.S. citizens and residents, including Plaintiff CAARPR and its members, the right to freely speak and assemble in public forums to seek redress of grievances they may have about the conduct of their government.

70. Section 1983 provides in pertinent part that:

> *Every person who, under color of any statute, ordinance, regulation, custom or usage of any State or Territory or the District of Columbia subjects or causes to be subjected, any citizen of the United States or other persons within the jurisdiction thereof of the deprivation of any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in any action at law, suit in equity or other proper proceedings for redress…*

71. Section (d)(1) of Chicago's Parade Ordinance:

    a. prohibits an organization from applying for more than one parade permit *even if they are sought for different dates;* and

    b. prohibits more than one organization from seeking different parade permits if the organizations *have even a single member in common*.

72. Section (d)(1) of the Ordinance is a facially unconstitutional prior restraint on Plaintiffs' right to engage in political speech insomuch as this section of the Ordinance allows Defendants to deny a parade permit based solely upon such application being "duplicative" as defined by Section (d)(1) without any consideration as to the political speech in which Plaintiffs seek to engage.

73.     In the alternative, Defendants have unconstitutionally applied Section (d)(1) of the Ordinance to Plaintiff CAARPR's application for a parade permit on August 22, 2024 by interpreting the ordinance to permit CDOT to deny a parade permit solely because an organization or more than one organization with a common member or members seek a parade permit on the same or even different days or which have "substantially similar themes" in the subjective opinion of the CDOT Commissioner.

74.     Section (d)(1) of the Ordinance allows Defendants to deny a parade permit to an organization based on unconstitutionally vague criteria.

75.     Section (d)(1) of the Ordinance allows Defendants to deny a parade permit to an organization and propose an alternate that is not narrowly tailored to meet a compelling government interest on a take-it-or-leave-it basis.

76.     In denying Plaintiff CAARPR's parade permit application for The March on the DNC 2024 for August 22, 2024 without consideration of the time, manner and place of the proposed permit, Defendants did in fact deny Plaintiff CAARPR's and its members' First Amendment rights by prohibiting Plaintiff CAARPR and its members from exercising their right to freely speak and assemble in a public forum on one of the only days the President and Vice President of the United States are likely to be in attendance.

77.     In addition to being harmed by Defendants' denial of their parade permits, Plaintiff CAARPR will again be harmed when it organizes parades, as it regularly does, and the Defendants apply the same criteria or maintain the same interpretation of this section of the Ordinance.

78.     Section (s) of the Ordinance establishes civil fines of not less than $200.00 nor more than $1,000.00 and establishes criminal penalties for any person who violates any section of the Ordinance, including Section (d)(1).

79.    The potential imposition of civil and criminal penalties on any party even applying for a parade permit which may be deemed to be "duplicative" under the overly broad definition of "duplicative" in Section (d)(1) of the Ordinance violates Plaintiffs' First Amendment rights in that the Ordinance has a chilling effect on Plaintiffs and other members of the public from even applying for a parade permit where the same organization has applied for a parade permit for another date or another organization *with even a single overlapping member* has applied for a parade permit.

80.    Defendants have, in fact, chilled Plaintiff CAARPR and unknown others' First Amendment rights in that Defendants directly threatened to seek penalties under the Ordinance when Plaintiff CAARPR appealed the denial of its parade permit applications. *See, e.g.,* Declaration of Inhe Choi, attached as Exhibit P.

WHEREFORE, Plaintiffs pray that this Court enter judgment against Defendants as follows:

A.    Declare that the Ordinance is void as it has violated and continues to violate Plaintiff CAARPR and other members' of the public First Amendment rights by imposing an unconstitutional restraint on the right to assemble and engage in political speech in a public forum;

B.    Declare that the Defendants have violated and continue to violate Section 1983 and the First Amendment;

C.    Issue a temporary and permanent injunction enjoining Defendants from enforcing Section (d) of the Ordinance;

D.    Award Plaintiff CAARPR's reasonable attorneys' fees and costs incurred in filing this action; and

E.    Grant such other and further relief as this Court deems appropriate and just.

**COUNT II**
**Violation of the First Amendment**
***Denial of Parade Permits without Proper Consideration of a***
***Narrowly Tailored Restriction to Serve a Compelling Government Interest***

Plaintiffs hereby incorporate and re-allege paragraphs 1 through 80 as though set forth

17

herein.

81.     The First Amendment of the U.S. Constitution protects the right of U.S. citizens and residents, including Plaintiffs CAARPR, AWC, SDS at UIC and USPCN and the respective members of each, the right to engage in political speech and assemble in public forums to seek redress of grievances they may have about the conduct of their government.

82.     Section 1983 provides in pertinent part that:

> *Every person who, under color of any statute, ordinance, regulation, custom or usage of any State or Territory or the District of Columbia subjects or causes to be subjected, any citizen of the United States or other persons within the jurisdiction thereof of the deprivation of any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in any action at law, suit in equity or other proper proceedings for redress…*

83.     While Section (g) of the Ordinance permits Defendants to deny a parade permit if: (1) the proposed parade will substantially or unnecessarily interfere with traffic in the area contiguous to the activity, or that, if the parade will substantially interfere with such traffic, that there are available at the time of the proposed parade sufficient city resources to mitigate the disruption; or (2) there are not available at the time of the parade a sufficient number of on-duty police officers, or other city employees authorized to regulate traffic, to police and protect lawful participants in the parade and non-participants from traffic-related hazards in light of the other demands for police protection at the time of the proposed parade, Section (k) requires the City of Chicago, in pertinent part:

> *When the commissioner denies an application for a parade permit, the commissioner shall authorize the conduct of a parade on a date, at a time, at a location, or over a route different from that named by the applicant. This alternate permit shall, to the extent practicable, authorize an event that will **have comparable public visibility and a similar route**, **location** and date to that of the proposed parade.*

Ordinance 10-8-330(k)(emphasis added)

84.     Plaintiffs CAARPR, AWC and SDS at UIC each sought a permit for a parade during the week of the DNC between August 19, 2024 and August 22, 2024 conducted within sight and sound of the DNC at the UC.

85.     In denying each Plaintiffs' parade application, Defendants offered only the City's Alternate Parade Route which is three miles away from the site of the UC, site of the DNC, in an area blocked from public view by trees and completely out of sight and sound of the DNC.

86.     Defendants unilaterally determined the City's Alternate Parade Route, ignored new information as it became available and failed or refused to engage Plaintiffs to determine if there was an alternate parade route with more comparable visibility to the DNC and a more similar route and location.

87.     Defendants' offer of the City's Alternate Parade Route was made on a take-it-or-leave-it basis or, in other words, if Plaintiffs CAARPR, AWC and SDS at UIC did not accept the City's Alternate Route, they would be forever denied a right to a parade permit during the DNC, and if Plaintiff USPCN did not accept the Defendants' Revised City Alternate Route, it would be forever denied a right to a parade permit during the DNC.

88.     At the time Defendants offered the City's Alternate Parade Route to Plaintiffs CAARPR, AWC and SDS at UIC, Defendants did not have sufficient information to formulate an alternative route that was sufficiently narrowly tailored to meet the City's compelling interest.

89.     At the time Defendants offered the Revised City Alternate Route to Plaintiffs CAARPR, AWC, SDS at UIC and USPCN, Defendants did not have sufficient information to formulate an alternative route that was sufficiently narrowly tailored to meet the City's compelling interest.

90.     Defendants initially failed or refused to make any effort to consider other alternate parade routes with more comparable visibility to the DNC and a more similar route and location at the time of offering the City's Alternate Parade Route.

91.     The City's Alternate Parade Route offered by Defendants to Plaintiffs:

        a.      was not narrowly tailored to serve a compelling government interest; and

        b.      did not leave open ample alternative channels for communication of the political speech Plaintiffs seek to relay at the DNC.

92.     In denying Plaintiff CAARPR's parade permit application for The March on the DNC 2024 for August 19, 2024, Plaintiff AWC's parade permit application for the March for the People's Agenda for August 22, 2024 and Plaintiff SDS at UIC's parade permit application for the March Against US funded Gaza Genocide for August 19, 2024, all with proposed routes within sight and sound of the DNC, and offering only the City's Alternate Parade Route on a take-it-or-leave-it basis, Defendants unconstitutionally interfered with Plaintiffs and their respective members' right to engage in political speech and assemble in a public forum.

93.     Defendants' application of the Ordinance in denying Plaintiffs CAARPR, AWC and SDS at UIC's parade permits applications pursuant to Section (g) of the Ordinance violated the First Amendment.

94.     Defendants' denial of the Plaintiffs CAARPR, AWC and SDS at UIC's parade permit applications, providing only the City Alternate Parade Route as a take-it-or-leave-it offer, without consideration of the time, manner and place of the proposed permit, Defendants did in fact deny Plaintiffs CAARPR, AWC and SDS at UIC and their respective members' First Amendment.

95.     In denying Plaintiffs CAARPR, AWC, SDS at UIC and USPCN's parade permit applications and offering the Revised City Alternate Route on a take-it-or-leave-it basis,

Defendants unconstitutionally interfered with Plaintiffs and their respective members' right to engage in political speech and assemble in a public forum.

96.     Defendants' application of the Ordinance in denying Plaintiffs CAARPR, AWC, SDS at UIC and USPCN's parade permits applications pursuant to Section (g) of the Ordinance violated the First Amendment.

97.     In addition to being harmed by Defendants' denial of their respective parade permits, Plaintiffs CAARPR, AWC, SDS at UIC and USPCN will again be harmed when each organizes parades, as each regularly does, and the Defendants apply the same criteria or maintain the same interpretation of this section of the Ordinance.

WHEREFORE, Plaintiffs pray that this Court enter judgment against Defendants as follows:

A.     Declare that the Defendants violated and continue to violate Section 1983 and the First Amendment in its application of the Ordinance;

B.     Issue a permanent injunction enjoining Defendants from enforcing and denying parade permits under the Ordinance or, in the alternative, compel Defendants to establish a procedure to utilize all information, including new information and information gathered from meeting with Plaintiffs or other members of the public seeking parade routes to determine alternate parade routes more narrowly tailored to meet a compelling government interest;

C.     Award Plaintiffs' reasonable attorneys' fees and costs incurred in filing this action; and

D.     Grant such other and further relief as this Court deems appropriate and just.

Respectfully submitted,

Dated:  December 19, 2024

*/s/Christopher J. Williams*
Christopher J. Williams (ARDC #6284262)
Workers' Law Office, P.C.
1 N. LaSalle, Suite 1275
Chicago, Illinois 60602
(312) 945-8737

Counsel for Plaintiff